# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 6-04-bk-11049-KSJ** |
| **JAPAN PACIFIC TRADING CORP.,** | **CHAPTER 11** |
| a  California corporation, | |
| **Debtor.** | |

_____/

| | |
|---|---|
| **In re:** | **CASE NO. 6-04-bk-11050-KSJ** |
| **FLORIDA SELECT CITRUS, INC., a** | **CHAPTER 11** |
| Florida corporation, | |
| **Debtor.** | |

_____/

| | |
|---|---|
| **In re:** | **CASE NO. 6-04-bk-11052-KSJ** |
| **AMERICAN MERCANTILE** | **CHAPTER 11** |
| **CORPORATION, a Florida corporation,** | |
| **Debtor.** | |

_____/

## AMENDED DISCLOSURE STATEMENT FOR
## <u>DEBTORS' JOINT PLAN OF REORGANIZATION</u>

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

R. Scott Shuker, Esq.
Mariane L. Dorris, Esq.
**GRONEK & LATHAM, LLP**
390 North Orange Avenue, Suite 600
Orlando, Florida 32801

Dated: May 6, 2005

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                                    **CASE NO. 6-04-bk-11049-KSJ**

**JAPAN PACIFIC TRADING CORP.,**              **CHAPTER 11**
**a California corporation,**

                              **Debtor.**
_____/

In re:                                                    **CASE NO. 6-04-bk-11050-KSJ**

**FLORIDA SELECT CITRUS, INC., a**            **CHAPTER 11**
**Florida corporation,**

                              **Debtor.**
_____/

In re:                                                    **CASE NO. 6-04-bk-11052-KSJ**

**AMERICAN MERCANTILE**                      **CHAPTER 11**
**CORPORATION, a Florida corporation,**

                              **Debtor.**
_____/


## AMENDED DISCLOSURE STATEMENT FOR
## DEBTORS' JOINT PLAN OF REORGANIZATION

## I.    INTRODUCTION

On October 7, 2004, Japan Pacific Trading Corporation, ("Japan Pacific"), Florida Select

Citrus Inc. ("Florida Select"), and American Mercantile Corporation ("AMC") (collectively

"Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the Middle District of Florida.

This Disclosure Statement is submitted to all known creditors of Debtors in compliance

with Section 1125 of Title 11, United States Code (the "Bankruptcy Code") in support of the

*Debtors' Joint Plan of Reorganization filed by Japan Pacific Trading Corporation, Florida*

*Select Citrus Inc., and American Mercantile Corporation,* dated February 18, 2005 (the "Plan"). This Disclosure Statement is being distributed to enable you to make an informed judgment about the Plan in connection with the solicitation of your vote on the Plan.

The Debtors have examined various alternatives to the Plan. Based on the information contained and summarized in this Disclosure Statement and for the reasons set forth below, Debtors have concluded that the Plan is the alternative that provides the best recovery to Creditors and Interest Holders.

THIS DISCLOSURE STATEMENT AND THE EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

II.     **PRELIMINARY STATEMENT**

This Disclosure Statement (1) summarizes the terms of the Plan and (2) contains other information, including summaries of the history, business, results of operations, management, properties, liabilities and assets of the Debtors and the assets available for distribution under the Plan. **DEBTORS STRONGLY URGE YOU TO CAREFULLY REVIEW THE CONTENTS OF THIS DISCLOSURE STATEMENT AND THE PLAN (INCLUDING THE EXHIBITS TO EACH) BEFORE MAKING A DECISION TO ACCEPT OR REJECT THE PLAN.[1] PARTICULAR ATTENTION SHOULD BE PAID TO THE PROVISIONS AFFECTING OR IMPAIRING YOUR RIGHTS AS A CREDITOR OR HOLDER OF AN INTEREST IN THE DEBTORS. THE PLAN IS A LEGALLY BINDING AGREEMENT AND SHOULD BE READ IN ITS ENTIRETY.**

---

[1]   Except as otherwise indicated, all capitalized terms used in this disclosure statement have the same meanings ascribed to them in the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

3

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**ACCORDINGLY, SOLICITED PARTIES MAY WISH TO CONSULT WITH THEIR ATTORNEYS TO ENSURE THAT THE CONTENTS OF THE PLAN ARE CLEAR AND UNDERSTOOD.**

The Court has set a hearing on the Confirmation of the Plan and to consider any objections to Confirmation of the Plan commencing at 1:00 p.m. on June 22, 2005, in the United States Bankruptcy Court, 135 West Central Blvd., Orlando, Florida, 32801 (the "Confirmation Hearing"). The Confirmation Hearing may be adjourned from time to time without notice other than an announcement of an adjourned date at the hearing. If the Bankruptcy Court confirms the Plan, it will enter the Confirmation Order.

Any objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for Debtors on or before the date set forth in the notice of the Confirmation hearing sent to you with this Disclosure Statement and the Plan.

All objections must be served on:

> R. Scott Shuker, Esq.
> Gronek & Latham, LLP
> 390 North Orange Avenue, Suite 600
> Orlando, FL 32801
> Counsel for the Debtors

A Ballot is enclosed herewith for Creditors vote on the Plan, by (1) marking on the Ballot that you (a) accept or (b) reject the Plan; and (2) signing your name and mailing the ballot in the envelope provided for this purpose.

**YOUR VOTE IS IMPORTANT. NONACCEPTANCE OF THE PLAN MAY LEAD TO A CHAPTER 7 LIQUIDATION, DISMISSAL OF THE CASE, OR THE CONFIRMATION OF ANOTHER PLAN. DEBTORS**

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

4

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**BELIEVE THAT THESE ALTERNATIVES WILL NOT PROVIDE ANY DISTRIBUTION TO HOLDERS OF ALLOWED UNSECURED CLAIMS.**

**TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS LISTED BELOW BY 4:00 P.M., ORLANDO, FLORIDA TIME, ON THE DATE LISTED ON THE BALLOT:**

> Office of the Clerk
> United States Bankruptcy Court
> 135 West Central Blvd.
> Orlando, FL 32801
>
> with a copy delivered to:
>
> R. Scott Shuker, Esq.
> Gronek & Latham, LLP
> 390 North Orange Avenue, Suite 600
> Orlando, Florida 32801

**IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED IN THE NOTICE PROVIDED HEREWITH, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESSES SHOWN ABOVE.**

## III. <u>BRIEF OVERVIEW OF CHAPTER 11</u>

Chapter 11 is the principal reorganization chapter under the Bankruptcy Code. In a Chapter 11 case, a debtor is authorized to reorganize its financial affairs for its own benefit and that of its creditors. Unless otherwise ordered by the Bankruptcy Court, a debtor will remain in operation and work out its financial difficulties. In a Chapter 11 case, the debtor continues to manage its affairs as a debtor-in-possession and as a fiduciary to the creditors of the estate.

The commencement of a Chapter 11 case creates an estate comprised all of the legal and equitable interests that the debtor has in property as of the date the bankruptcy petition is filed. The filing of a chapter 11 petition also triggers the "automatic stay" provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides for a stay or an injunction

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

5

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

against any attempt to collect a prepetition debt, claim or obligation from the debtor or to otherwise interfere with its property or financial affairs. Unless the Bankruptcy Court orders otherwise, the automatic stay remains in full force and effect until the plan of reorganization is confirmed.

Confirmation of a plan of reorganization is the primary purpose of a Chapter 11 case. The plan of is a binding legal agreement setting forth the means by which the debtor will satisfy claims against or interests in the debtor. Although it is referred to as a plan of reorganization, plan may also provide for a sale of the debtor as a going concern or for an orderly liquidation of a debtor's assets. The confirmation process and the conditions for confirming either a consensual or nonconsensual plan are more fully described below.

In this case, the Debtors' Plan calls for the issuance of New Shares of Common Stock of Reorganized Debtor. Additionally, the Plan provides for structured payments over time to certain Holders of Allowed Secured Claims as more specifically described below in Article XI, and the creation of the Liquidating Creditor Trust which will be vested with certain cash and proceeds of certain Avoidance Actions to the benefit of Unsecured Creditors. Following confirmation of the Plan, Debtors will be substantively consolidated into one Reorganized Debtor.

After a plan of reorganization is filed, the holders of claims or interests which are impaired are permitted to vote to accept or reject the plan. Section 1125 of the Bankruptcy Code requires that prior to soliciting acceptances of the proposed plan, the debtor must obtain court approval of a disclosure statement for the plan, determines that it contains adequate information as will enable a hypothetical, reasonable investor to make an informed judgment about the plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

6

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Chapter 11 does not require unanimous acceptance of a plan of reorganization. A majority of at least two-thirds in dollar amount and more than one-half of the number of the holders of allowed claims actually voting in each "impaired" class constitutes acceptance by that class. Holders of Claims who fail to vote will not be counted as having either accepted or rejected the plan. Even though a Creditor may choose not to vote or may choose to vote against the plan, the Creditor will be bound by the terms of the plan if it is confirmed by the Bankruptcy Court. Classes of claims that are not "impaired" under a plan are presumed to have accepted the plan of reorganization and, therefore, are not entitled to vote. Likewise, a class of claims or interests that is not retaining or receiving anything under the plan is presumed to have rejected the plan and, even though "impaired," is not entitled to vote.

A Chapter 11 plan also must meet various other requirements for Confirmation set forth in Section 1129 of the Bankruptcy Code. Among other things, the Bankruptcy Court must determine that a plan of reorganization is in the "best interests" of creditors and that it is "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims under a plan is not less than what would be received if the assets of the debtor were liquidated in a Chapter 7 liquidation. The "feasibility" test requires that there is a reasonable probability that the debtor will be able to perform the obligations set forth in the plan and that the debtor will be able to continue operations after confirmation without the need for further financial reorganization. Debtors believe that the Plan satisfies both of these requirements.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

7

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

In the event that any impaired class does not accept the plan, the proponent may seek confirmation under the so-called "cram down" provisions of Section 1129(b) of the Bankruptcy Code.

In this case, if any Impaired Class votes to reject the Plan, Debtors will seek to satisfy the requirements of Confirmation under the "cramdown" provisions of the Bankruptcy Code.

## IV.    RISK FACTORS TO BE CONSIDERED

The success of the Plan is subject to a number of material risks, including those discussed below. The financial projections included in this Disclosure Statement as **Exhibit A** contain many assumptions, including, confirmation and consummation of the Plan in accordance with its terms, general business and economic conditions and other matters, many of which are beyond the control of Debtors and some of which may not materialize.

Unanticipated events and circumstances occurring subsequent to the preparation of the projections may affect the actual financial results of the Reorganized Debtor. Therefore, the actual results achieved throughout the period covered by the projections will vary from the projected results. These variations may be material. Prior to voting on the Plan, you should carefully consider all risk factors as well as all of the information contained in this Disclosure Statement, including the Plan and other exhibits thereto.

The effect, if any, which the continuation of these Cases in the absence of confirmation of the Plan may have upon the operations of Debtors cannot be accurately predicted or quantified. Although bankruptcy no longer has the same negative stigma it once had, some entities may be uncomfortable doing business with a company that has sought bankruptcy relief. If Confirmation and consummation of the Plan do not occur expeditiously, the Cases could

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

8

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

adversely affect relationships with customers, suppliers and employees, resulting in a material adverse impact on operations.

## V.    DISCLAIMERS; REPRESENTATIONS LIMITED

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION BEARING ON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.  FOR THE CONVENIENCE OF CREDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES THIS SUMMARY.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, TOGETHER WITH ANY ATTACHED EXHIBITS AND APPENDICES, CONCERNING THE FINANCIAL CONDITION OF THE DEBTORS OR THE EVENTS LEADING UP TO THE BANKRUPTCY CASES ARE BASED ON THE DEBTORS' BOOKS AND RECORDS AND ON OTHER FINANCIAL AND OTHER INFORMATION KNOWN BY THE DEBTORS AND THE PROFESSIONALS EMPLOYED BY THEM IN THE CHAPTER 11 CASES.  INDEPENDENT CERTIFIED ACCOUNTANTS OR AUDITORS HAVE SUBJECTED NONE OF THIS INFORMATION TO AN AUDIT.  THE RECORDS MAINTAINED BY THE DEBTORS ARE DEPENDENT, IN PART, UPON ACCOUNTING PERFORMED BY OTHERS. THE DEBTORS HAVE ATTEMPTED TO INCORPORATE ACCURATE INFORMATION IN THIS DISCLOSURE STATEMENT

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

9

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

AND THE PLAN, AND TO THE BEST OF THE DEBTORS' KNOWLEDGE THE INFORMATION IS TRUE AND ACCURATE.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS, BY NATURE, FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY ULTIMATELY PROVE TO BE INCORRECT, AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE EXPERIENCE.

THIS DISCLOSURE STATEMENT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, (THE "SECURITIES ACT") OR APPLICABLE STATE SECURITIES LAWS. NEITHER THE SECURITIES AND EXCHANGE COMMISSION, NOR ANY STATE REGULATORY AUTHORITY HAS PASSED ON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT, THE EXHIBITS HERETO OR THE STATEMENTS CONTAINED HEREIN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE. EACH CREDITOR SHOULD CONSULT HIS OR HER OWN COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND RELATED MATTERS.

NO REPRESENTATIONS CONCERNING THE DEBTORS HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU IN DECIDING

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6-04-bk-11050, 6:04-bk-11052-KSJ

10

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS AT THE ADDRESS HEREIN PROVIDED AND TO THE ASSISTANT UNITED STATES TRUSTEE, SUITE 650, SOUTHTRUST BANK BUILDING, 135 WEST CENTRAL BOULEVARD, ORLANDO, FLORIDA 32801.**

## VI.    COUNSEL FOR THE DEBTORS; INQUIRIES

Inquiries concerning this Disclosure Statement, the Plan, voting procedures and other matters should be directed to counsel, R. Scott Shuker, Esq., Gronek & Latham, LLP, 390 North Orange Avenue, Suite 600, Orlando, FL 32801 (Telephone: 407-481-5800; Facsimile: 407-481-5801).

## VII.   THE REORGANIZATION CASE

### A.    Commencement of the Cases

On October 7, 2004, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. Debtors chose to seek relief under Chapter 11 due to the pending foreclosure suit by Public Bank, successor-by-merger to People State Bank of Groveland ("Public Bank"), ongoing operational losses, and threatened legal action by vendors. Copies of all relevant Bankruptcy Court papers are on file with the Bankruptcy Court, and may be obtained (at your own expense) from the Office of the Clerk of the United Bankruptcy Court for the Middle District of Florida, 135 West Central Blvd., Orlando, Florida, 32801.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

11

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**B.**     <u>**General**</u>

Japan Pacific is a California corporation authorized to do business in Florida, with its principal place of business in Groveland. Florida Select is a Florida corporation, incorporated on October 23, 1990, authorized to do business in Florida, with its principal place of business in Groveland. On or about October 26, 1990, Japan Pacific acquired all of the outstanding stock in Florida Select. Pre-petition, Japan Pacific and Florida Select operated an orange and grapefruit juice processing and packaging plant ("Packaging Plant"), on approximately 40 acres of land located in the center of Groveland, Florida. Japan Pacific and Florida Select also own approximately 240 acres of orange and grapefruit groves located approximately one (1) mile south of the Packaging Plant. Mr. Tominaga and the probate estate of Mr. Tominaga's deceased spouse nominally own 100% of Japan Pacific. However, pursuant to voting-pledge agreements, Sherwood Investments (Overseas) Ltd., a company organized and existing under the laws of the British Virgin Islands ("Sherwood"), has full voting control of Japan Pacific. Julian Benscher is the current president, treasurer and director of Japan Pacific and Florida Select, and George Roat is the current secretary and director of Japan Pacific and Florida Select. Mr. Benscher is the authorized signatory with full power-of-attorney for Sherwood. Sherwood is owned by a trust for the benefit of certain family members of Mr. Benscher; however, Mr. Benscher is not a beneficiary of this trust.

AMC was originally incorporated as a California corporation on August 25, 1960. On or about July 1, 1990, Japan Pacific assumed control of the business operations and management of AMC. On or about September 28, 1998, AMC merged and became a Florida corporation, with its principal place of business in Groveland. AMC cultivates and sells orchids to wholesalers

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

12

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

and flea markets. Mr. Tominaga and the probate estate of his deceased spouse own 100%

shareholder of AMC; however, Sherwood has full voting control. Julian Benscher is the current

president, treasurer and director of AMC, and George Roat is the current secretary and director

of AMC.

### C.    Significant Developments

#### 1.    Prepetition Loans to Debtors in Possession (Public Bank Loans)

On or about September 21, 2000, Japan Pacific and Florida Select executed and

delivered to Public Bank a Mortgage Note in the principal amount of $1,000,000.00 ( the "Public

Bank First Note"). As collateral and security for the performance of Japan Pacific and Florida

Select under the terms of the Public Bank First Note, on or about September 21, 2000, Japan

Pacific and Florida Select executed in favor of and delivered to Public Bank a Mortgage and

Security Agreement (the "Public Bank First Mortgage"), granting and conveying to Public Bank

a first priority mortgage lien upon and security interest in several parcels of real property located

in Lake County Florida (the "Lake County Real Property").[2]  In order to provide additional

collateral for the Public Bank First Note, Japan Pacific and Florida Select executed and delivered

to Public Bank an Assignment of Leases, Rents, and Profits, dated September 21, 2000 (the

"Public Bank Rent Assignment").

On or about June 19, 2002, Japan Pacific and Florida Select executed and

---

[2] For a complete description of the real property subject to the liens of Public Bank, see Public Bank's, successor-by-merger to Peoples State Bank of Groveland, Motion for Relief from the Automatic Stay and in the Alternative for Adequate Protection, Doc. No. 45, Case No. 6:04-bk-11050-KSJ.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

13

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

delivered to Public Bank an Amended and Restated Mortgage Note in the principal amount of $3,241,666.70 (the "Public Bank Restated Note").  Among other things, the Public Bank Restated Note increased the amount of debt, modified and extended the repayment terms, and otherwise reaffirmed the Public Bank First Note, the Public Bank First Mortgage, and the Public Bank Rent Assignment.  In order to collateralize, modify, amend and restate the Public Bank First Mortgage and the Public Bank Rent Assignment consistent with and in accordance with the terms of the Public Bank Restated Note, Japan Pacific and Florida Select executed and delivered to Public Bank a Notice of Future Advance, Mortgage Extension and Modification Agreement, dated June 19, 2002 (the "Public Bank Mortgage Extension").  The Public Bank First Mortgage and the Public Bank Rent Assignment, as modified by the Public Bank Mortgage Extension, are hereinafter referred to the "Public Bank Mortgage" and "Public Bank Rent Assignment" respectively.  The Public Bank Restated Note, the Public Bank Mortgage, the Public Bank Rent Assignment, together with all other documents evidencing or relating to the indebtedness evidenced by the Public Bank Restated Note, are hereinafter collectively referred to as the "Public Bank Loan Documents."  AMC guaranteed the Public Bank Note.

## 2.       Prepetition Loans to Debtors in Possession (Sherwood Loans)

Between April 2001 and July 2002, Sherwood made various loans to Yasuhiko Tominaga, the previous owner, director and president of the Debtors ("Tominaga"), Japan Pacific, Florida Select and AMC, jointly and severally, in the principal total amount of $10,750,000.00 as evidenced by (i) the Amended and Consolidated Promissory Noted dated April 19, 2001 in the principal sum amount of $2,519,290.18 (the "Sherwood April 2001 Note"); and (ii) the Amended and Consolidated Secured Promissory Note in the principal amount of

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

14

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

$8,230,709.82 dated July 19, 2002 (the "Sherwood July 2002 Note"). Both the Sherwood April 2001 Note and the Sherwood July 2002 Note consolidated prior notes executed by Tominaga, Japan Pacific, Florida Select and AMC in favor of Sherwood. In connection with the Sherwood April 2001 Note, Tominaga, Japan Pacific, Florida Select and AMC executed various related loan and security documents in favor of Sherwood. These documents include an Amended and Consolidated Loan Agreement and an Amended and Consolidated Stock Pledge and Escrow Agreement (the "Stock Pledge Agreement"), UCC-1 Financing Statement, and a Mortgage and Security Agreement (the"Mortgage") conveying to Sherwood a security interest in certain real and personal property located in Groveland, Florida. In connection with the Sherwood July 2002 Note, Tominaga, Japan Pacific, Florida Select and AMC executed in favor of Sherwood various related loan and security documents which included the aforementioned Mortgage which is secured by the obligations under the Sherwood July 2002 Note.

Furthermore, Tominaga (and his then wife), Japan Pacific, AMC and Florida Select executed and delivered to Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A. ("Escrow Agent") individual Stock Powers in connection with the Stock Pledge Agreement ("Stock Powers") and the corresponding corporate stock certificates of Japan Pacific, Florida Select and AMC ("Pledged Shares"). Pursuant to the provisions of paragraph 2 of the Stock Pledge Agreement, the Escrow Agent was authorized to convert the blank endorsement of Tominaga to a special endorsement naming Sherwood as the transferee of the Pledged Shares.

### D. Events Leading to Chapter 11 Filing

On or about February 19, 2004, Japan Pacific and Florida Select defaulted under the

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

15

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

terms of the Public Bank Loan Documents.  By letter dated May 28, 2004, from Public Bank's counsel to Japan Pacific and Florida Select (the "May 28th Letter"), Public Bank provided Japan Pacific, Florida Select, and the guarantors, Tominaga and AMC, notice of the default and demanded immediate payment, in full, of all amounts due and owing under the terms of the Public Bank Restated Note and the Public Bank Loan Documents.  No further payments were made to Public Bank.

On or about June 25, 2004, when the indebtedness was not paid in accordance with the May 28th Letter, Public Bank instituted an action to foreclose the lien and security interest in the Lake County Real Property, and the personal property located thereon, in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida, styled Peoples State Bank of Groveland vs. Japan Pacific Trading Corporation et al., case no. 2004-CA-002210 (the "Foreclosure Action").

In addition, Tominaga, Japan Pacific, Florida Select and AMC defaulted on their obligations under both the Sherwood April 2001 Note and the Sherwood July 2002 Note based upon, among other things, their failure to make the payments as specified thereunder.  In a letter dated June 30, 2004 ("June 30th Letter") Sherwood formally notified Tominaga, Japan Pacific, Florida Select and AMC of their default on the Sherwood April 2001 Note and the Sherwood July 2002 Note.  Thereafter, by letter dated July 1, 2004 ("July 1st Letter"), Sherwood's counsel also formally notified Tominaga, Japan Pacific, Florida Select and AMC of their default on the Sherwood April 2001 Note and the Sherwood July 2002 Note.

The default continued to go unremedied and on July 1, 2004 Sherwood demanded delivery from the Escrow Agent of the Pledged Shares identified in the Stock Pledge Agreement.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

16

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

In return, on July 1, 2004, pursuant to the terms of the Stock Pledge Agreement, the Escrow Agent sent Tominaga, Japan Pacific, Florida Select and AMC five (5) days written notice advising them of Sherwood's demand for release of the Pledged Shares and requesting confirmation of the alleged default ("Notice of Demand"). The Notice of Demand specifically informed Tominaga that the Pledged Shares would be released to Sherwood in the event that the Escrow Agent did not receive either the outstanding sums due and owing under the Sherwood April 2001 Note and Sherwood July 2002 Note or written objection within five (5) business days of the date of the Notice of Demand. Tominaga acknowledged the receipt of the Notice of Demand as evidenced by Tominaga's July 6, 2004 letter to Julian M. Benscher, Sherwood's authorized signatory (the "July 6th Letter"). However, Tominaga made no objection to the Escrow Agent regarding the Notice of Demand. In fact, the July 6th Letter merely attempts to rationalize Tominaga's default on his obligations to Sherwood, while never expressly objecting to the release of the Pledged Shares from escrow.

Pursuant to the Stock Pledge Agreement, on July 13, 2004 the Escrow Agent delivered the Pledged Shares to Sherwood. The Escrow Agent notified Tominaga, Japan Pacific, Florida Select and AMC of the delivery to Sherwood by letter dated July 13, 2004 (July 13th Letter"). Pursuant to the provisions of paragraph 6 of the Stock Pledge Agreement and the endorsed Stock Powers, Sherwood obtained title to the Pledged Shares and voting control of Japan Pacific, Florida Select and AMC. In order to protect and preserve the assets and business operations of Japan Pacific, Florida Select and AMC, on July 15, 2004 Sherwood executed corporate resolutions terminating the officers and directors and appointed new officers and directors of the respective entities to vote ("Resolutions"). On July 15, 2004, Julian Benscher presented

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

17

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Tominaga, Japan Pacific, Florida Select and AMC with the Resolutions, the corporate stock certificates, the Stock Powers and a power of attorney authorizing him to act on behalf of Sherwood, and requested the release of the corporate seals and the corporate books and records of Japan Pacific, Florida Select and AMC.

Upon obtaining managerial control over Japan Pacific, Florida Select and AMC, Sherwood realized the full extent of the financial straits facing the Debtors. In addition to the defaults under the Sherwood April 2001 Note, the Sherwood July 2002, and the Public Bank Loan Documents, and the Foreclosure Action, the Debtors were unable to pay vendors in a timely manner and consequently losing valuable inventory and, potentially, customers. Furthermore, the Debtors were being threatened with additional litigation from vendors, which would consume more resources and further reduce inventory. Consequently, on October 7, 2004, Julian Benscher and George Roat authorized the filing of voluntary petitions for reorganization for Japan Pacific, Florida Select, and AMC (the "Petition Date").

> **E.**      **Events Subsequent to Chapter 11 Filing**

To make the transition into the Chapter 11 Cases a fluid one, with the least amount of disruption to the current operations, the Debtors obtained several first day orders (the "First Day Orders") authorizing compensation of officers and short-term use of cash collateral. Since the entry of the Orders for Relief, Debtors have filed and prosecuted numerous motions as in their business judgment are necessary to allow for the continued smooth and efficient operation of their business during the course of the Chapter 11 Cases, some, but not all of which are more fully described in this section below.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

18

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

1. **Loans to Debtors in Possession ("DIP Loan") and Use of Cash Collateral**

On or about October 8, 2004, Florida Select and AMC filed Emergency Motions to Use Cash Collateral ("Cash Collateral Motions"). On November 9, 2004, the Court entered Interim Cash Collateral Orders: (i) authorizing the use of Cash Collateral; (ii) granting Public Bank and Sherwood replacement liens to the same extent and with the same validity and priority as their respective prepetition liens *nunc pro tunc* to the Petition Date; and (iii) scheduling a final hearing. At the final hearing, the Court orally granted the Cash Collateral Motions: (i) approving the use of Cash Collateral; (ii) and granting Adequate Protection to Public Bank and Sherwood.

On or about October 12, 2004, Florida Select and AMC filed Emergency Motions to Obtain Credit and Incur Debt ("DIP Motions"). In the DIP Motions, Florida Select and AMC requested a post-petition loan pursuant to 11 U.S.C. §364(c) and (d) to cover operating expenses and certain repairs. Sherwood agreed to extend a post-petition loan, as a future advance, in the combined amount of $180,000.00 (the "DIP Loan") to fund post-petition operations in return for a super priority administrative claim in this matter in the full amount of the DIP Loan, plus accrued interest. Moreover, the DIP Loan would be secured to the same extent as Sherwood's prepetition loan. The Court entered Orders Granting the DIP Motions: (i) authorizing AMC and Florida Select to borrow funds from Sherwood in an amount not to exceed $180,000.00, which shall fund ongoing operations, pursuant to the terms of this Order; (ii) accruing interest at six percent (6%) per annum; however, no periodic payments would be due, and the DIP Loan would mature in six (6) months; and (iii) securing the DIP Loan to the same

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

19

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

extent, validity, and priority as Sherwood's prepetition loan. The DIP Loan shall also have administrative status superior to all other administrative claims except such claim shall be *pari passu* to any administrative claim in favor of Public Bank under Bankruptcy Code §507(b).

## 2. Appointment of Examiner

On November 30, 2004, the Court entered an order appointing an examiner to review the operations of the Debtors and the secured claims of Public Bank, and Sherwood. On December 2, 2004, the Court entered an order approving the application of Michael Moecker as the Chapter 11 Examiner ("Examiner"). After meeting with representatives of the Debtors, parties in interest, and interested parties, and investigating the business activities, assets and potential legal issues and causes of action with respect to each Debtor, the Examiner issued his First Report and Statement of Investigation on February 7, 2005 ("Examiner's Report").[3] As more fully set forth in the Examiner's Report, the Examiner made several conclusions and recommendations with respect to the potential reorganization of the Debtors.

Primarily, the Examiner found no evidence of intentional wrongdoing by the Debtors or their current principals subsequent to the Petition Date. The Examiner believes that the business operations of AMC with respect to the orchid cultivation and sales is a viable and on-going business. Furthermore, the Examiner estimates the value of the 37.5 +/- acre site comprising the former processing plant of Florida Select and the 3.5 +/- acres comprising the CSX frontage property as having a potential value between $5 and $7 million, and the 268 +/- acres in the Green Swamp used for orchid growing by AMC as having a potential value between

___

[3] The Examiner's Report appears at docket entry number 109 in the case styled In re Japan Pacific Trading Corporation, case no. 6:04-bk-11049-KSJ, docket entry number 171 in the case styled In re Florida Select Citrus Inc., case no. 6:04-bk-11050-KSJ, and docket entry number 132 in the case styled In re American Mercantile Corporation, case no. 6:04-bk-11052-KSJ.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

20

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

$500,000.00 and $1 million.  In addition, the Examiner identified several potential causes of action which may provide a source of funds for distribution to the unsecured creditors, as well as several grounds for objections to Claims filed in each of the Chapter 11 Cases.

3.        **Bar Date for the Filing of Proofs of Claims**

The Bankruptcy Court set a Bar Date for the filing of Proofs of Claim and Interest in the Debtors' bankruptcy cases for February 7, 2005 (the "Initial Bar Date").  The Notice to Creditors and Interest Holders was mailed out on or about October 10, 2004.  As of the Initial Bar Date, approximately 70 claims have been filed against the Debtors in the aggregate amount in excess of $22,000,000.00.

On or about January 21, 2005, AMC filed an Amendment to Schedule F listing additional Holders of Unsecured Claims (Doc. No. 123). The Bankruptcy Court set a second Bar Date fixing the time for additional creditors to file a Proof of Claim in AMC's bankruptcy case for March 8, 2005 (the "Second Bar Date").

4.        **Florida Select Sale**

On or about October 2004, Silver Springs Inc. ("Silver Springs"), Florida Select and Japan Pacific began negotiations for the purchase of the processing equipment owned by Florida Select and for the lease of the Packaging Plant owned by Japan Pacific for two years ("Florida Select Sale") because for at least the six (6) months preceding the Petition Date, Florida Select had been unable to operate on a positive cash flow basis.  Consequently, Florida Select was forced to pursue alternatives to operating the Packaging Plant in order to facilitate a successful reorganization or going-concern sale.  To that end, Florida Select and Japan Pacific agreed to a lease agreement with Silver Springs to lease the real and certain personal property

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

21

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

associated with the Packaging Plant to Silver Springs. On November 10, 2004 Japan Pacific and Florida Select filed a Motion for Authority to Lease Property of the Estate and Enter Post-Petition Lease Agreement (Doc. Nos. 37 and 55).

The terms of the Florida Select Sale provide for lease of the Packaging Plant to Silver Springs for a period of two (2) years and for Silver Springs to pay monthly lease payments in the amount of $4,166.00.  Silver Springs is also be responsible for all business expenses including post-petition lease payments and insurance.  In addition to the lease transaction, Florida Select has also agreed to an asset purchase agreement with Silver Springs to sell all tangible personal property associated with the Packaging Plant to Silver Springs for the sum of $1,000,000.00.

After having failed to receive a more competitive bid for the lease of the Packaging Plant and the purchase of the associated equipment pursuant to the Motion for Approval of Sale Procedures and Bidding Protections[4], the Bankruptcy Court entered an order on January 5, 2005, Granting the Debtor's Motion to Sell Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and Exemption of Sale from Stamp or Other Similar Taxes[5]. Subsequently thereafter, on January 28, 2005 the Florida Select Sale closed.

### F.    Debtor-in-Possession Operating Reports

---

[4]  The  Motion for Approval of Sale Procedures and Bidding Protections appears at docket entry number 110 in the case styled In re Florida Select Citrus Inc., case no. 6:04-bk-11050-KSJ.  The Order Granting the Motion for Approval of Sale Procedures and Bidding Protections appears at docket entry number 124 in the case styled In re Florida Select Citrus Inc., case no. 6:04-bk-11050-KSJ.

[5]  The Order Granting the Debtor's Motion to Sell Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and Exemption of Sale from Stamp or Other Similar Taxes appears at docket entry number 147 in the case styled  In re Florida Select Citrus Inc., case no. 6:04-bk-11050-KSJ.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

22

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

The Debtors have filed their Debtor-in-Possession Operating Reports ("DIP Reports") during the pendency of the Cases. All DIP Reports are on file with the Bankruptcy Court and with the United States Trustee and are available for inspection by creditors or parties-in-interest. In brief, the Debtors collectively, began the Cases with about $2,100.00 cash and have obtained approximately $ 130, 000.00 from the DIP Lender; as of December 31, 2004, the Debtors had about $84,841.80 cash on hand.

## VIII.   PLAN OVERVIEW

**THE FOLLOWING IS A SUMMARY, INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD READ THE PLAN IN ITS ENTIRETY CAREFULLY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

This Plan is premised, among other things, on the substantive consolidation of the Debtors' assets and liabilities and the cancellation of Debtors' outstanding Common Stock. In general, all Common Stock of Debtors will be canceled upon the Effective Date and the New Common Stock will be distributed to Sherwood in exchange for releasing the Reorganized Debtor from liability under the DIP Loan. Additionally, a trust will be created, the Liquidating Creditors Trust ("Trust"), and the Trust will be vested with any and all preference causes of action, fraudulent transfer causes of action, and all other causes of action pursuant to 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and 550, other than the Toole Adversary Proceeding (the "Avoidance Actions"), and all Claim valuations pursuant to 11 U.S.C. §506, and all objections to Claims pursuant to 11 U.S.C. §502 which were not pending as of Confirmation. The Toole

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

23

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Adversary will be retained by Debtors, or, as the case may be, Reorganized Debtor because the adversary has already been commenced and any recovery is likely subject to the Allowed Secured Claims in Classes 3 through 5.

Funding for Confirmation will come from the Florida Select Cash on Confirmation and the AMC Cash on Confirmation. The Florida Select Cash on Confirmation will be used to pay the Allowed Administrative Claims, United States Trustee Fees, with the remaining balance to the Liquidating Creditor's Trust in Class 7. The AMC Cash on Confirmation will be used to pay the Allowed Administrative Claims, United States Trustee Fees, with the remaining balance to be used to fund the ongoing operations of the Reorganized Debtor.

Payment to the Allowed Secured Claims in Japan Pacific and Florida Select will also be made from the Florida Select Real Property Sale. Currently, Japan Pacific and Florida Select are in the process of seeking a zoning change from industrial to commercial for their joint real property. Thereafter, the Reorganized Debtor expects to market the property with developers and other potential land owners to solicit the highest possible return for the real property. At this time, no broker has been retained, but the Reorganized Debtor will employ one if in the best interest of creditors. Reorganized Debtor will actively market the real property and is currently developing a list, based on prior sales efforts, of potential purchasers. It is not contemplated that the property will be sold through auction.

## IX. WHO MAY VOTE

The Plan divides the Allowed Claims of Creditors and the Interests of Allowed Interest Holders into eight (8) Classes. Only Classes which are impaired by the Plan are entitled to vote, unless no compensation or payment is provided for such Class, in which event such Class is conclusively deemed not to have accepted the Plan. A Class is impaired if legal, equitable or

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

24

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

contractual rights attaching to the Claims or Interests of the Classes are modified, other than by curing defaults and reinstating maturities.

In determining acceptances of the Plan, votes will be counted only if submitted by a Creditor or Interest Holder: (i) whose Claim is duly scheduled by the Debtors as other than disputed contingent or unliquidated; (ii) who has timely and properly filed with the Bankruptcy Court a Proof of Claim or Interest which has not been objected to, disallowed or suspended prior to computation of the votes on the Plan; or (iii) whose Claim is estimated at a fixed amount by the Bankruptcy Court for voting purposes. Notwithstanding the foregoing, all Claims will be counted to the extent they are not disputed. **The Ballot which you receive does not constitute a Proof of Claim.**

If a Claim is disputed in its entirety as of the Ballot Date, the Ballot submitted with respect to that Claim shall not be counted, except to the extent the Debtors' objection to that Claim states otherwise or the Bankruptcy Court orders otherwise upon the timely application of the Claim Holder.

If a Claim is disputed as to amount or classification as of the Ballot Date, the Ballot submitted with respect to that Claim shall be counted in the amount and classification set forth in the Claim objection unless the Court orders otherwise upon the timely application of the Claim Holder.

The amount and classification of any Ballot must correspond to the amount and classification in any pending Proof of Claim, unless an order, agreement or stipulation has modified the Claim amount or classification, in which case the Ballot should reflect the modified treatment of the Claim. Any Ballots that are incorrect as to Claim amount or classification will be adjusted by the Ballot Agent.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

25

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

## X.  DESCRIPTION OF THE PLAN

A DISCUSSION OF THE PRINCIPAL PROVISIONS OF THE PLAN AS THEY RELATE TO THE TREATMENT OF CLASSES OF ALLOWED CLAIMS AND INTERESTS IS SET FORTH BELOW.  THE DISCUSSION OF THE PLAN WHICH FOLLOWS CONSTITUTES A SUMMARY ONLY, AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES.  ALL SUMMARIES OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY THE PLAN ITSELF AND THE DOCUMENTS DESCRIBED THEREIN WHICH ARE CONTROLLING.  YOU ARE URGED TO READ THE PLAN IN FULL IN EVALUATING WHETHER TO ACCEPT OR REJECT THE DEBTORS' PROPOSED PLAN OF REORGANIZATION. IF ANY INCONSISTENCY EXISTS BETWEEN THIS SUMMARY AND THE PLAN, THE TERMS OF THE PLAN CONTROL.

## XI.  PLAN TERMS

### A.  Treatment of Administrative Claims, Professional Fees and Priority Tax Claims

The Debtors estimate that due and unpaid Administrative and Priority Claims required to be paid on the Effective Date in these Cases; including Professional Fees, Priority Tax Claims, and unpaid amounts for post-petition use of personal property, will total approximately $100,000.00.  As required by the Bankruptcy Code, Administrative Claims are not classified: the Holders do not vote because the Claims are treated as required by the Bankruptcy Code.  The following discussion summarizes the Plan's provisions regarding Administrative Claims, Professionals Fees, and Priority Tax Claims.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

26

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

1.      **Administrative Claims**

Reorganized Debtor will pay each Holder of an Allowed Administrative Claim (except for Professionals Fees to the extent that their treatment, which is set forth below, differs) in full in the amount of the Allowed Claim, without interest, in Cash, on the later of (a) the Effective Date or (b) within thirty (30) days after the Claim becomes an Allowed Claim, or (c) the date such Claim, if it is an Ordinary Course Administrative Expense Claim, is payable in the ordinary course of the Debtors' business according to existing credit terms. The Reorganized Debtor will pay said Allowed Claims with funding from the Florida Select Cash on Confirmation and the AMC Cash on Confirmation.

a.      **Administrative Claims Bar Date**

The Plan provides that a request for payment of Administrative Claims or Administrative Tax Claims must be filed and served on Debtors' counsel and the U.S. Trustee such that it is filed and received by not later than the Administrative Claims Bar Date (set by Order of the Bankruptcy Court) or such Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property.

b.      **Payment of Unpaid U.S. Trustee Fees**

Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

2.      **Services by and Fees for Professionals**

The Plan provides that Debtors will pay the Professionals in Cash, the amount awarded to such Professionals by Final Order of the Bankruptcy Court on the later of the Effective Date or the date upon which any order awarding fees and/or expenses becomes a Final

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6-04-bk-11050, 6-04-bk-11052-KSJ

27

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Order.  The Holder of an Allowed Claim for Professional Fees may be paid on such other date and upon such other terms as may be agreed upon by the Professional.

Each Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application.  Only the amount of fees allowed by the Bankruptcy Court will be required to be paid under the Plan.  All such allowances shall be subject to deductions for payments already made pursuant to the Order authorizing interim compensation of professionals.

The Plan provides that all reasonable fees for services rendered in connection with the Chapter 11 Cases and the Plan <u>after</u> the Effective Date, including those relating to the resolution of pending Claims, shall be paid by Reorganized Debtor without further Bankruptcy Court authorization.

**3.      Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, at the option of Reorganized Debtor: (1) payment in full in Cash on the Effective Date (or as soon thereafter as practicable), or (2) seventy-two (72) equal monthly payments over six (6) years from the date of assessment in accordance with Bankruptcy Code Section 1129(a)(9)(c), including interest payable at the applicable statutory rate, or (c) as otherwise agreed by the Holder and Reorganized Debtor.  AMC estimates that approximately $130,000.00 in payroll taxes are due and owing.

**4.      Administrative Claims for Use of Personal Property**

Certain leaseholders or equipment vendors in financing contracts have alleged unpaid amounts occurring Post-Petition.  Such Claimants must file a request for administrative expense claim prior to the Administrative Claims Bar Date; such date will be

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

28

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

contained in the order conditionally approving the Disclosure Statement and setting the hearing

for Confirmation of the Plan.  Debtors believe the approximate amount of the alleged

administrative claims related to use of personal property is approximately $5,000.00.  As will be

discussed *supra*, Debtors specifically reject all leases and executory contracts which are not

assumed or assigned prior to Confirmation.  As such, many of the Holders of the Administrative

Claims noted herein will also have alleged Claims for rejection damages.  The timing for filing

claims for rejection damages is contained *supra*.

      **B.**      **Classification and Treatment of Claims against Debtors**

      The Claims against and Interests in the Debtors are classified as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Wage, Vacation and Commission Claims | Unimpaired | Not entitled to vote |
| Class 2 – Sherwood (DIP Loan) | Impaired | Entitled to Vote |
| Class 3 – Public Bank (Florida Select/Japan Pacific) | Impaired | Entitled to Vote |
| Class 4 – Sherwood (Florida Select/Japan Pacific) | Impaired | Entitled to Vote |
| Class 5 – Lake County Tax Collector | Impaired | Entitled to Vote |
| Class 6 – Sherwood (AMC) | Impaired | Entitled to Vote |
| Class 7 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 – Equity (Florida Select, Japan Pacific, and AMC) | Impaired | Not entitled to Vote |

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

29

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

C. **Treatment of All Classes**

1. **Class 1: Priority, Wage, Vacation and Commission Claims**

   Payment in full in cash on Effective Date or as otherwise agreed.[6]

   a. **Classification:** Class 1 consists of the Other Priority Claims against the Debtors. Debtors are currently unaware of any Claims that fall into this category.

   b. **Treatment:** After paying Allowed Administrative Claims and except to the extent that the Holder of the Allowed Claim in Class 1 agrees to a different treatment, Reorganized Debtor will pay Allowed Class 1 Claims: (1) in full, in Cash, without interest, on the later of the Effective Date; (2) within thirty (30) days after the Claim becomes an Allowed Claim; or (3) the date on which such Claim otherwise becomes due and payable. Funding for the Allowed Class 1 Claims will be from the Florida Select Cash on Confirmation and the AMC Cash on Confirmation.

   c. <u>Voting</u>: Class 1 is an <u>Unimpaired Class</u> and Holders of Class 1 Claims are <u>not</u> entitled to vote.

2. **Class 2: Sherwood (DIP Loan)**

   a. <u>Classification</u>: Class 2 consists of the DIP Loan extended by Sherwood, the repayment of which is secured to the same extent, validity, and priority as Sherwood's prepetition loan on the real property, personal property, accounts receivable and inventory of Florida Select, Japan Pacific and AMC. The DIP Loan also has administrative status superior to all other administrative claims except such claim shall be *pari passu* to any administrative claim

---

[6] Employee wages, owner-operator, agent, broker wages, commissions, and similar compensation, correspondence taxes, and routine tax payments will be made in the ordinary course with Court approval.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

30

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

in favor of Public Bank under Bankruptcy Code §507(b).  The aggregate amount of Sherwood's

DIP Loan is approximately $180,000.00.

   b.  <u>Treatment</u>: In full satisfaction of the amount of the Allowed Class 2

Secured Claim, Sherwood, or its assigns, will be issued 100% of the New Common Stock in the

Reorganized Debtor.  In exchange for the New Common Stock, Sherwood shall release Florida

Select and AMC from liability of the amounts due and owing under the DIP Loan.  Moreover,

final documents for the New Common Stock will be available for inspection, upon request to

Debtors' counsel, prior to Confirmation

   c.  <u>Voting</u>: Class 2 is <u>Impaired</u> and the Holder is entitled to vote to accept or

reject the Plan.

   **3.**  **<u>Class 3: Public Bank (Florida Select/Japan Pacific)</u>**

   a.  <u>Classification</u>:  Class 3 consists of the Claim of Public Bank, the

repayment of which is secured by a first Lien on all real property, all personal property and

accounts receivable of Florida Select and Japan Pacific (collectively, the "Public Bank

Collateral").  Debtors assert that the aggregate amount of Public Bank's Secured Claim is less

than the value of the Public Bank Collateral securing it, so it is treated as fully secured.  The

amount of the Public Bank Secured Claim is $3,125,019.48, as of October 7, 2004, together with

interest at the note rate as provided in the Public Bank Restated Note from February 19, 2004

forward.

   b.  <u>Treatment</u>: On the Effective Date, Reorganized Debtor will execute and

deliver to Public Bank a Modification and Extension of the Public Bank Restated Note (Post

Confirmation) in a form to be presented to Debtors prior to the Confirmation Hearing (the

"Public Bank Agreement") the terms and conditions of which are incorporated by reference

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

31

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

herein as if fully set forth herein. The Allowed Secured Claim of Public Bank will include all accrued interest and attorneys' fees and be repaid in accordance with the Public Bank Agreement, the main terms of which are as follows:

(i) Public Bank shall retain all its Liens and security interests until its Allowed Secured Claim is paid in full, without the necessity of filing or recording any further documents. No changes have been made to the prepetition definitions of the collateral;

(ii) The payment term of the Public Bank Agreement shall provide for payments to Public Bank thereunder by the Reorganized Debtor identical to the terms of repayment of the Silver Springs Note Assignment (i.e., payments in the amount of $27,777.77 during the period April 28, 2005 through September 28, 2005; $250,000.00 on or before October 28, 2005; payments of $41,666.66 during the months November 28, 2005 through April 28, 2006); provided, however, that commencing with the first calendar month subsequent to the calendar month in which the last payment under the Silver Springs Note Assignment is due to be paid, the Public Bank Agreement shall require the Reorganized Debtor to make a payment on or before the tenth day of each month in the amount of $ 26,114.65, through and including December 10, 2006. Payments on the Class 3 claims will be applied first to fees and costs;

(iii) The Reorganized Debtor shall satisfy, reaffirm and/or execute such other documents as Public Bank and its legal counsel may reasonable require to evidence, perfect, and continue the liens and security interests currently held by Public Bank;

(iv) On December 31, 2006 (the "Revised Maturity Date") all outstanding principal, together with any accrued and unpaid interest owing, and any and all other sums due under either the Public Bank Agreement or other Public Bank Loan Documents, shall be due and payable, in full;

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

32

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

(v) Upon the Revised Maturity Date, Public Bank's Allowed Secured Claim shall either be paid in full, after the satisfaction of the Allowed Secured Claim of Class 5, or receive a deed to the Public Bank Collateral as the indubitable equivalent of its Claim, subject to the rights of the Holder of the Allowed Class 5 Claim. Any unsatisfied deficiency, if allowed, will be treated as an Unsecured Claim in Class 7. Note, it is anticipated that payment of the Class 3 Allowed Secured Claim will come from the Silver Springs Note Assignment and the Florida Select Real Property Sale.

In order to provide Public Bank with assurance that it will be able to exercise all of its remedies as a fully secured creditor under the Public Bank Agreement and the Public Bank Loan Documents, Debtors agree, and the order confirming this Plan will provide, that so long as any amounts remain due and unpaid under any of the Public Bank Agreement and the Public Bank Loan Documents:

(i) that in the event a bankruptcy petition under any Chapter of the Bankruptcy Code (11 U.S.C. § 101, et seq.) is filed by or against Reorganized Debtor, that the filing and existence of such petition shall constitute cause for dismissal of any such bankruptcy petition pursuant to 11 U.S.C. § 1112(b); and

(ii) that in the event a bankruptcy petition under any Chapter of the Bankruptcy Code (11 U.S.C. § 101, et seq.) is filed by or against Reorganized Debtor, Public Bank shall be entitled to the immediate entry of an order from the appropriate bankruptcy court granting Public Bank complete relief from the automatic stay imposed by § 362 of the Bankruptcy Code (11 U.S.C. § 362) to exercise its foreclosure and other rights, including but not limited to obtaining a foreclosure judgment and foreclosure sale, upon the filing with the appropriate court of a motion for relief from the automatic stay. Reorganized Debtor specifically

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

33

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

agrees, and the order confirming the Plan will provide that (A) upon filing a motion for relief from the automatic stay, Public Bank shall be entitled to relief from the stay without the necessity of an evidentiary hearing and without the necessity or requirement that Public Bank establish or prove the value of the Public Bank Collateral, the lack of adequate protection of its interest in the Public Bank Collateral, or the lack of equity in the Public Bank Collateral; (B) the lifting of the automatic stay hereunder by the appropriate bankruptcy court shall be deemed to be "for cause" pursuant to § 362(d)(1) of the Bankruptcy Code (11 U.S.C. § 362(d)(1)), as being, in such a successor case, a bad faith filing, or otherwise; and (C) Reorganized Debtor will not directly or indirectly oppose or otherwise defend against Public Bank's efforts to gain relief from the automatic stay.  These provisions are not intended to preclude Reorganized Debtor from filing a subsequent petition for protection under any Chapter of the Bankruptcy Code.  The remedies prescribed in this paragraph are not exclusive and shall not limit Public Bank's rights under the Public Bank Agreement and the Public Bank Loan Documents, this Plan, or under any law.

The Public Bank Agreement shall be in full force and effect upon its execution by the Debtors and delivery to Public Bank.  The Court shall retain jurisdiction to determine and resolve controversies until the remaining parts of the case administration are concluded and a Final Decree is entered.  After the Effective Date, Reorganized Debtor and Public Bank may amend the Public Bank Agreement without further order of Court.

c.      Voting: Class 3 is Impaired and the Holder is entitled to vote to accept or reject the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

34

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**4.** **Class 4: Sherwood (Florida Select/Japan Pacific)**

a.     Classification:  Class 4 consists of the Allowed Claim of Sherwood, the repayment of which is secured by its Lien on the real property, personal property, and accounts receivable of Florida Select and Japan Pacific.  Debtors allege that the aggregate amount of Sherwood's Claim is more than the value of the collateral securing it, so it is treated as under-secured.  The face amount of Sherwood's Secured Claim is $ 16,149,658.67.

b.     Treatment: The Holder of Allowed Class 4 Claims shall retain its Lien on the real property, personal property, and accounts receivable of Florida Select and Japan Pacific. The Allowed Secured Claim will be paid in full over time with interest.  Interest shall accrue at the note rate as set forth in the Sherwood April 2001 Note and Sherwood July 2002 Note. Within two years and upon the Florida Select Real Property Sale, Sherwood's Allowed Secured Claim shall be paid in full, after the satisfaction of the Allowed Secured Claims of Classes 3 and 5.  Any unsatisfied deficiency, if allowed, will be treated as an Unsecured Claim in Class 7.

c.     Voting: Class 4 is Impaired and the Holder is entitled to vote to accept or reject the Plan.

**5.** **Class 5: Lake County Tax Collector**

a.     Classification:   Class 5 consists of the Secured Claim of the Lake County Tax Collector for the 2003 and 2004 tax years on the real property owned by Japan Pacific, in the approximate amount of $47,000.00.[7]

b.     Treatment:  The Holder of Allowed Class 5 Claims shall retain its Lien on the real property of Japan Pacific and accrue interest at seven percent (7%).  Within two years

---

[7] The Lake County Tax Collector has filed proofs of claims numbered 16, 17, 18, 19, 20, 21, 22, and 23 in the bankruptcy case styled In re Japan Pacific Trading Corporation, case no. 6:04-bk-11049-KSJ.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

35

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

and upon the Florida Select Real Property Sale, Lake County Tax Collector's Allowed Secured Claim shall be paid in full.

       c.      <u>Voting</u>: Class 5 is Impaired and the Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

       **6.**      **<u>Class 6: Sherwood (AMC)</u>**

       a.      <u>Classification</u>**:**  Class 6 consists of the Allowed Secured Claim of Sherwood, the repayment of which is secured by its Lien on the real property, personal property, accounts receivable, and inventory of Florida Select, Japan Pacific, and AMC.  Debtors assert that the aggregate amount of Sherwood's Claim is more than the value of the collateral securing it, so it is treated as under-secured. The face amount of Sherwood's Secured Claim is $16,149,658.67.

       b.      <u>Treatment</u>: The Holder of Allowed Class 6 Claim shall retain its Lien on the real property, personal property, accounts receivable, and inventory of Florida Select, Japan Pacific, and AMC.  The Allowed Secured Claim will be paid in full through the issuance of a PIK Note by the Reorganized Debtor.  The PIK Note will be in the face amount of Sherwood's Allowed Secured Claim as to AMC and bear interest as eight percent (8%) per annum.  The PIK Note will require monthly payments of $50,000.00. which will be applied first to accrued post Confirmation interest and then to principal.  The PIK Note will mature, with all amounts due, in sixty (60) months.  If the Reorganized Debtor has insufficient funds to make any required monthly payments (up to a maximum shortfall of $25,000.00 per month), the Reorganized Debtor shall issue additional PIK Notes for such monthly shortfalls.  At maturity, the Reorganized Debtor will, initially, attempt to pay the balance of the Class 6 Claim through a

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

36

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

refinancing. If refinancing is not possible, Reorganized Debtor may be forced to sell the orchid operation to pay such claim.

   c. <u>Voting</u>: Class 6 is <u>Impaired</u> and the Holder is entitled to vote to accept or reject the Plan.

   **7.** **<u>Class 7: General Unsecured Claims (Florida Select, Japan Pacific and AMC)</u>**

   a. <u>Classification</u>: Class 7 consists of all Holders of Allowed Unsecured Claims against Florida Select, Japan Pacific, and AMC, including any deficiency claims of the Holders of Allowed Class 3, 4, and 6 Claims.

   b. <u>Treatment</u>: On the Effective Date, or as soon thereafter as practicable, in full satisfaction of their Allowed Unsecured Claims, each Holder of an Allowed Class 7 Claim will become beneficiaries of the Liquidating Creditors Trust, a liquidating trust to be formed on the Effective Date, which will be managed by the Creditor Agent, Michael Moecker, pursuant to the terms of the Liquidating Creditors Trust Agreement which shall be made available prior to Confirmation. Each beneficiary of the Trust will receive a *Pro Rata* Share of any distributions that may be made by the Creditor Agent, which Pro Rata Share will be based on the total amount of Allowed Unsecured Claims.

   The Liquidating Creditors Trust will receive the following assets on the Effective Date:

     (1) all preference causes of action, fraudulent transfer causes of action, and all other causes of action pursuant to 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and 550, other than the Toole Adversary Proceeding (the "Avoidance Actions"); and

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

37

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

(2)        all Claim valuations pursuant to 11 U.S.C. §506, and all objections to Claims pursuant to 11 U.S.C. §502 which were not pending as of Confirmation.

The Creditor Agent will have the power and authority to pursue the claims and Causes of Action transferred to the Trust for the benefit of Class 7 creditors. The Creditor Agent shall be notified by the Reorganized Debtor of a sale of any property, other than in the ordinary course of business, at least thirty (30) days before closing. The Creditor Agent shall have two (2) weeks to object to any proposed sale, and if so, any such objection or controversy shall be resolved by the Court. The Creditor Agent will attempt to obtain funds to distribute to Class 7 creditors from the assets transferred to the Liquidating Creditors Trust, but it is difficult to provide an estimate of the timing or amount of such recoveries or the prospects of a distribution. Any distributions to Class 7 creditors are speculative in nature, and depend upon such contingencies as the success in litigation by the Creditor Agent.

The Liquidating Creditors Trust shall be responsible for all distributions to Allowed Class 7 Claims and for all claims objections for Class 7 Claims and all claim valuations; provided, however, that the Reorganized Debtor shall provide assistance to the Creditor Agent (including documents and testimony) as necessary in connection with any objection. As of Confirmation, the Liquidating Creditors Trust will likely not have any liquid assets.

c.      <u>Voting</u>: Class 7 is <u>Impaired</u> and each Holder is entitled to vote to accept or reject the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6-04-bk-11050, 6-04-bk-11052-KSJ

38

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

8.      **Class 8: Equity Interests (Florida Select, Japan Pacific and AMC)**

a.      <u>Classification</u>: Class 8 consists of the Interests in Florida Select, Japan Pacific, and AMC represented by all of the authorized and issued shares of Common Stock and all claims related thereto and any other similarly situated Claims subject to subordination under Bankruptcy Code §510(b).

b.      <u>Treatment</u>: The Common Stock will be extinguished and will become null and void upon Confirmation.  The Holders will not receive or retain any property on account of such Interests.

c.      <u>Voting</u>: Class 8 is <u>Impaired</u>; but, pursuant to Section 1126(g) of the Bankruptcy Code, the Holder is not entitled to vote on the Plan.

D.      **Treatment of Executory Contracts and Unexpired Leases**

1.      **Rejection of Executory Contracts and Unexpired Leases**

Except for an executory contract or unexpired lease that was previously assumed or assigned by an Order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code, or as to any executory contract or unexpired lease that is assumed or assigned pursuant to a separate motion filed in conjunction with or prior to Confirmation, **all other executory contracts and unexpired leases entered into by Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected on the Effective Date pursuant to Section 365 of the Bankruptcy Code.**  The Confirmation Order will constitute an Order of the Bankruptcy Court approving the rejections as noted herein pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases will be responsible for taking all steps necessary to retrieve any personal property that is the subject of such executory contract or lease.

2. **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Pursuant to the Plan, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of the date of entry of the Confirmation Order or an Order of the Bankruptcy Court approving such rejection. The Plan provides that any Claims arising from the rejection of an executory contract or unexpired lease not filed within such times will be forever barred from assertion against Japan Pacific, Florida Select, AMC, the Reorganized Debtor, any other entity, their estates and property unless otherwise ordered by the Bankruptcy Court or provided in the Plan; all such Claims for which proofs of claim are required to be filed will be, and will be treated as, Class 7 Claims subject to the provisions of Article III of the Plan. Debtors estimate the amount of such rejection claims to be no more than $100,000.00.

E. **Procedures For Resolving Disputed Claims**

1. **Prosecution of Objections to Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtors shall have the right to make and File objections to Administrative Claims and the Liquidating Creditors Trust shall have the right to make and File objections to all other Claims and all claim valuations.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections and valuations to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections or valuations are made within 90 days after the Confirmation Date.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

40

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, any Debtor had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Chapter 11 Cases as if the Chapter 11 Cases had not been commenced.

### 2. Estimation of Claims

Pursuant to the Plan, Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

41

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

### 3. Cumulative Remedies

In accordance with the Plan, all of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

### 4. Payments and Distributions on Disputed Claims

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtor's Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtor, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

### 5. Allowance of Claims and Interests

#### a. Disallowance of Claims

According to the Plan, all Claims held by Entities against whom any Debtor has obtained a Final Order establishing liability for a cause of action under Sections

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ          U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the related Debtor by that Entity are turned over to such Debtor.

b.    **Allowance of Claims**

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.

6.    **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

F.    **Effect of Confirmation**

1.    **Substantive Consolidation/Vesting of Cash and Assets in  Reorganized Debtor**

On the Effective Date, the Debtors will be substantively consolidated into the Reorganized Debtor and all Estate Assets will vest in Reorganized Debtor which shall assume any and all responsibility for the payments under the Plan.  The surviving entity will be AMC.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

43

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Debtors believe substantive consolidation is warranted because the substantial overlap of debts among the three debtors. Moreover, due to Mr. Tominaga's previous co-mingling of assets and many inner-company transfers, it would be difficult to determine an exact tracing of debts and allocation thereof. On the Effective Date, all of Florida Select, Japan Pacific, and AMC's outstanding Common Stock will be extinguished. New Common Stock will be distributed to the Holder of the Allowed Class 2 Claim.

**2. Post-Confirmation Corporate Management and Structure**

On the Confirmation Date, the officers and directors of Reorganized Debtor shall be as follows:

| **Directors** | **Compensation** |
|---|---|
| Julian Benscher | N/A |
| George Roat | N/A |

| **Officers** | |
|---|---|
| Julian Benscher | N/A |
| George Roat | N/A |

Reorganized Debtor reserves the right to adjust such compensation at a date which is six months following the Effective Date.

**3. Authority to Effectuate the Plan**

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying Reorganized Debtor's by-laws such that the provisions of this Plan can be effectuated. The Reorganized Debtor and the Creditor Agent shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

44

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

4.      **Post-Confirmation Status Report**

Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Creditor Agent, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

5.      **Escrows**

Pursuant to the Plan, all escrows previously established in the Chapter 11 Cases and still in existence on the Effective Date will continue to be administered, and the escrowed funds shall be released, according to their terms and any orders of the Bankruptcy Court previously entered. Escrowed funds that are released to the Reorganized Debtor after the Effective Date will be used to achieve Consummation and carry out the Plan.

G.      **Means for Implementation of Class 7 – Creation of Creditors Trust**

1.      **Creation of the Creditors Trust.** A Creditors Trust shall be created for benefit of Class 7 Creditors under the Plan. The Liquidating Creditors Trust shall be governed by the terms of a Creditors Trust Agreement. The terms and conditions of the Creditors Trust shall be substantially as identified in the Creditors Trust Agreement which shall be made available prior to Confirmation. Currently, it is not known exactly who will govern the Liquidating Creditor's Trust and Debtors must resolve such control uncertainty prior to Confirmation. Debtors believe they will select three or five existing creditors to serve as trustees of the Liquidating Creditor's Trust, but such potential trustees have not yet been determined.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

45

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

2.      **Creditor Agent**.  Michael Moecker shall serve as the Creditor Agent of the Liquidating Creditors Trust for a period of time commencing on the Effective Date.  The Creditor Agent shall be deemed an agent of the Class 7 creditors who may be entitled to receive distributions under the Plan.  The Creditor Agent shall perform the duties and have the rights and obligations proscribed in the Creditors Trust Agreement.

The Debtors shall be authorized and directed to execute, deliver, receive and exchange on behalf of the Estates any and all documents necessary to effectuate the transfer of the Trust Assets to the Liquidating Creditors Trust on the Effective Date.

3.      **Compensation for Creditor Agent.**  The Creditor Agent shall be paid on a per hour basis plus actual out-of-pocket expenses, to be paid monthly from the Trust Assets, pursuant to the Creditor Trust Agreement and the Plan.

4.      **Removal of Creditor Agent.**  The Creditor Agent may be removed for good cause by the Bankruptcy Court, pursuant to the terms and conditions of the Creditors Trust Agreement.

5.      **Preservation, Prosecution and Defense of Causes of Action.**

On behalf of the Liquidating Creditors Trust, the Creditor Agent shall have the right to pursue any and all preference causes of action, fraudulent transfer causes of action, and all other causes of action pursuant to 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and 550, other than the Toole Adversary Proceeding (the "Avoidance Actions"), and all Claim valuations pursuant to 11 U.S.C. §506, and all objections to Claims pursuant to 11 U.S.C. §502 which were not pending as of Confirmation.  The Creditor Agent shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Creditor Agent and collection; provided, however, that the Creditor Agent shall be

authorized at any point in any litigation (a) to enter into such settlements as the Creditor Agent deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Creditor Agent deems such action to be in the best interest of creditors. As of Confirmation, the Liquidating Creditor's Trust will likely not have any liquid assets.

6. **Retention of Professionals.** The Creditor Agent may retain professionals on such terms as the Creditor Agent deems reasonable, subject to the terms of the Creditors Trust Agreement, without Bankruptcy Court approval, except that payments to the professionals for post-confirmation services and expenses shall be made in accordance with the Creditors Trust Agreement and the Plan.

7. **Payment of Costs/Expenses.**

a. All costs and expenses and obligations incurred by the Creditor Agent in administering the Creditors Trust and/or Plan or in any manner connected, incidental or related thereto shall be a charge against the Creditors Trust, including but not limited to, payments to the Creditor Agent and any attorneys, accountants, brokers or other professionals employed by the Creditor Agent (the Creditor Agent and Professionals, together "Creditors Trust Professionals"). The Creditor Agent and the Creditor Agent Professionals shall submit copies of the complete invoices (with time records) to one another each month. Upon being satisfied as to the correctness and reasonableness of any and all such costs, expenses and obligations, the Creditor Agent shall approve and direct the payment to the Creditors Trust Professionals within thirty days of receipt of the invoice.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

47

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

b.      Any professionals retained by the Examiner or Debtor pursuant to 11 U.S.C. § 327 and 1103 shall submit applications to the Court for fees and expenses incurred during the period between the Confirmation Date and Effective Date pursuant to 11 U.S.C. § 330, which shall be paid by the Reorganized Debtor within ten (10) days after entry of a Final Order allowing such Claim.  Upon the Effective Date, all professionals retained by the Debtor or the Examiner pursuant to 11 U.S.C. § 327 shall be terminated.

H.      **CERTAIN FEDERAL INCOME TAX MATTERS FOR CLASS 7 CREDITORS**

*Creditors should note that the following discussion related to Class 7 Creditors only, since it pertains to the tax treatment they will receive as Trust Beneficiaries of the Liquidating Creditors Trust.*   The Liquidating Creditors Trust is intended to be a liquidating trust as such term is used in Revenue Procedure 94-45 promulgated by the Internal Revenue Service.  Such Revenue Procedure sets forth certain requirements for the Liquidating Creditors Trust, the Plan, this Disclosure Statement and the Creditors Trust Agreement.  Although the Debtors believe the Creditors Trust is a liquidating trust, as such term is used in Revenue Procedure 94-45, there can be no assurances made that the Trust will qualify as such a liquidating trust and the Debtors have not sought a private letter ruling from the Internal Revenue Service concerning whether the Trust so qualifies.

The following discussion is a summary of certain significant Federal income tax consequences of the Plan and the Liquidating Creditors Trust, as they relate to Class 7 Creditors.  It is based upon laws, regulations, rulings, and court decisions now in effect, all of which are subject to change, possibly with retroactive effect.  *This discussion is not intended to be a legal*

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

48

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

*opinion and does not constitute legal advice as to any particular person or entity involved in or having an interest in (directly or indirectly) the Bankruptcy Estate of Debtors.*

The federal income tax consequences to the holders of claims may vary based on the particular circumstances of each claimant. This summary does not address the aspects of federal income taxation applicable to claimants which are subject to special treatment for federal income tax purposes including, but not limited to, financial institutions, tax-exempt entities, insurance companies and foreign persons. Moreover the federal income tax consequences of certain aspects of the Plan are uncertain due to the lack of a definitive legal authority. No ruling has been obtained from the Internal Revenue Service ("IRS") as of the filing of the Plan, and no opinion of counsel has been or will be obtained by the Creditor Agent with respect thereto. Each creditor and interest holder is urged to consult its own tax advisor regarding the federal, state and local income and other tax consequences of the Plan.

1. **Conveyance Of Trust Estate To Liquidating Creditors Trust for Class 7 Creditors**

Under the Plan, the Debtors, as Settlor, will irrevocably convey legal title to the "Trust Estate," as defined in the Creditors Trust Agreement and as described in the Plan, in trust, to the Creditor Agent. Under the Liquidating Creditors Trust Agreement, the beneficial ownership of the assets and rights to the proceeds of the assets will be vested in the Class 7 Creditors who will be the Trust Beneficiaries. The sole purpose of the Liquidating Creditors Trust is to liquidate the assets of the Liquidating Creditors Trust in favor of the Trust Beneficiaries. The Liquidating Creditors Trust has no intention of continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Creditors Trust.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

49

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

## 2. Benefits Of Liquidating Creditors Trust for Class 7 Creditors

The Class 7 Creditors of the Debtors' Estates are interested in maximizing the dollar amounts ultimately distributable from the Trust Estate for the benefit of Class 7 Creditors. One important consideration in maximizing this total return to the creditors is taxation. The owners of interests in a business entity are often taxed twice on the earning of the business. The first level of taxation occurs when the business entity earns income and pays tax on those earnings. The second level of taxation occurs when the business entity distributes its earnings to its owners and the business owners are required to pay tax on the distributions. By creating a liquidating trust, the Class 7 Creditors of the Trust will pay tax on the earnings of the Trust as the income is earned, but not when the earnings are ultimately distributed. Accordingly, the funds will be taxed once, not twice, thereby saving the creditors from the double taxation they would suffer without the creation of the Trust.

In addition, by placing the assets of the Trust Estate into the Liquidating Creditors Trust an orderly disposition of the Debtors' assets can occur without the requirement to make dispositions of the Debtors' assets at distressed prices. Therefore, the Class 7 Creditors will have the opportunity to increase the dollars available for distribution and achieve a higher percentage of their claims.

## 3. Taxation Of Class 7 Creditors/Trust Beneficiaries On Formation Of Creditors Trust

On formation, the Liquidating Creditors Trust will issue certificates of beneficial interests to the Class 7 Creditors in exchange for their proportionate level of claims on the assets and liabilities transferred by the Debtors' Estates to the Creditors Trust. The transaction will be considered a taxable transaction to each Class 7 Creditor. The basis of each

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

50

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Class 7 Creditor in their trust certificates and in the underlying assets will be each Class 7 Creditor's proportionate share of the fair market value of the assets at the time of distribution of the certificates of beneficial interest to the initial owners.

The Debtors believe that the total claimed will far exceed the fair market value of the total assets. Each Class 7 Creditor will have income or loss equal to the difference between the Class 7 Creditor's proportionate share of the fair market value of the assets and such Class 7 Creditor's tax basis in its claims.

### 4.    Reporting Of Tax Information By Liquidating Creditors Trust

The Creditor Agent will be required to file an annual income tax return with the Internal Revenue Service for each year of the Trust. Each Trust Beneficiary of the Liquidating Creditors Trust will report the activities of the Liquidating Creditors Trust with respect to its proportionate interest in the assets from the information supplied by the Creditor Agent. Each Trust Beneficiary will be required to pay its proportionate share of any tax with respect to the reported activities, whether or not reserves for disputed claims are established and regardless of whether the Creditor Agent distributes sufficient cash to pay the tax.

### 5.    Trust Management

(a)    Term. The Trust term is intended to be five years or less. However, the Creditor Agent may apply to the Bankruptcy Court to extend the Trust Term at the discretion of the Court, provided the extension is approved six months prior to the beginning of the extended period.

(b)    Distributions. The Liquidating Creditors Trust is required to distribute at least annually to the Trust Beneficiaries all of its net income plus all net proceeds from the sale of assets, except that the Trust may retain an amount of net

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

51

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims). In addition, the Plan and the Liquidating Creditors Trust Agreement require the Creditor Agent to make continuing efforts to dispose of the Trust assets, make timely distributions, and not unduly prolong the duration of the Trust.

   (c) <u>Retained Liquid Assets</u>. The Liquidating Creditors Trust will neither receive nor retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.

   Under the Creditors Trust Agreement, the investment powers of the Creditor Agent, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

   In the event any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or 50% or more of the stock of a corporation with operating assets are transferred to the Liquidating Creditors Trust, an explanation of the necessity to retain these assets will be provided to the Internal Revenue Service.

   The Creditor Agent shall consistently value the assets transferred to the Liquidating Creditors Trust and those valuations must be used by the Trust Beneficiaries for all federal income tax purposes.

##   6. Failure To Receive Creditors Trust Status

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6-04-bk-11050, 6-04-bk-11052-KSJ

52

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

In the event the IRS determines that for tax purposes the Liquidating Creditors Trust is not a Creditors Trust, the Reorganized Debtor will apply for tax treatment as a partnership. If the Trust does not qualify for tax treatment as either a Creditors Trust or a partnership, the Trust will be treated as a corporation, and the earnings of the Trust will be subject to double taxation, once when earned by the Liquidating Creditors Trust, and again when the Trust Beneficiaries receive the distributed earnings.

7.      **Backup Withholding And Information Reporting Required**

**All Class 7 Creditors to be paid by the Liquidating Creditors Trust must provide the Creditor Agent with its taxpayer identification numbers (i.e., social security numbers or employer identification number).**  Payors of interest, dividends, and certain other reportable payments are generally required to withhold thirty-one percent (31%) of such payments if the payee fails to furnish to the payor, his or her correct taxpayer identification number.  Moreover, the Liquidating Creditors Trust may be required to withhold a portion of any payments made to a holder of a Class 7 Claim which does not provide its taxpayer identification number.

8.      **Tax Treatment Of A Disposition Of An Interest In The Creditors Trust**

If a Class 7 Creditor desires to sell his claim, he must obtain authority to do so from the Liquidating Creditors Trust.  In the event a Class 7 Creditor/Trust Beneficiary is permitted by the Creditor Agent to sell or otherwise dispose of all or any part of its interest in the Liquidating Creditors Trust, each subsequent purchaser of a beneficial interest in the Liquidating Creditors Trust will have his or her own separate cost basis in his or her certificate and in his or her share of the underlying assets.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

53

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

### 9. Tax Effect Of Liquidating Creditors Trust On Debtor

Under the Plan and the Creditor Trust Agreement, the Debtors retain a remote residuary interest in the assets of the Liquidating Creditors Trust. The Debtors are entitled to receive the assets of the Trust Estate in the event the Trust Beneficiaries receive 100% of their allowed unsecured claims plus interest. It is currently anticipated that the Trust Beneficiaries will receive considerably less than 100% of the value of their present allowed unsecured claims on final payment from the Creditors Trust. As such, the Debtors' retained interest in the Trust is less than 5% and probably will not result in the taxation of the Debtors.

## XII. MEANS FOR IMPLEMENTATION OF PLAN

### A. Funding of Plan

The source of funds to achieve Consummation and to carry out the Plan shall be (1) the Florida Select Cash on Confirmation; (2) AMC Cash on Confirmation; (3) Reorganized Debtors' post-Confirmation business operations; and (4) any sales of Assets after the Effective Date.

### B. Rights of the Debtors and the Creditor Agent

The Plan provides that in addition to their other rights under the Plan, the Reorganized Debtor and the Creditor Agent shall have the right, but not the obligation, (a) to retain and compensate professionals (including, but not limited to the Professionals retained by Debtors or the Examiner prior to the Effective Date) and other Persons to assist them to perform their duties under the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

54

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

C.    **Surrender of Existing Securities**

The Plan provides that a holder or lienholder of any security representing an equity interest in Debtors must surrender such security as a condition to receiving a Distribution under the Plan on account of such security.  The Plan provides that a holder or lienholder of any equity instrument in Debtors must surrender such instrument as a condition to receiving a Distribution under the Plan on account of such note or instrument.  Any Holder of a Claim that fails to (a) surrender such note or instrument or (b) execute and deliver an affidavit of loss and/or indemnity satisfactory to Debtors and furnish a bond in form, substance, duration and amount satisfactory to Debtors before the Confirmation Hearing, shall be deemed to have forfeited all rights and Claims on such note or instrument and shall not receive any Distribution on account of being a Holder of such security, note or instrument.

D.    **Stock Options**

In conjunction with the Plan, any and all stock options that have been previously granted are being rejected and extinguished under the Plan.

E.    **Debtor's Causes of Action**

1.    All Causes of Action shall remain Assets of the Estates pursuant to § 1123(b)(3)(B) of the Bankruptcy Code.  On the Effective Date, the Avoidance Actions, and all objections to Claims pursuant to 11 U.S.C. §502 and Claim valuations pursuant to 11 U.S.C. §506 shall be transferred to and vest in the Liquidating Creditors Trust.

2.    Unless a Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or in a Final Order, all rights with respect to such Cause of Action are reserved to Reorganized Debtor or, as applicable, the Liquidating Creditors Trust, which respective party may pursue such Cause of Action.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

55

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Reorganized Debtor shall provide assistance to the Creditor Agent (including documents and testimony) as necessary in connection with the Creditor Agent's investigation or pursuit of any of the Avoidance Actions.

3.      Except as to Avoidance Actions transferred to the Liquidating Creditors Trust as noted herein, the Reorganized Debtor may pursue or decline to pursue any of the Causes of Action, as appropriate, in its business judgment, subject to the provisions of the Plan. Reorganized Debtor may settle, release, sell, assign, otherwise transfer or compromise such Causes of Action, in its business judgment upon order of the Court, subject to the provisions of the Plan.

4.      Likewise, the Creditor Agent may pursue or decline to pursue any Avoidance Actions, as appropriate, in his business judgment, subject to the provisions of the Plan. The Creditor Agent may settle, release, sell, assign, otherwise transfer or compromise such Avoidance Actions, in his business judgment upon order of the Court, subject to the provisions of the Plan.

## XIII.   CONDITIONS PRECEDENT TO CONFIRMATION

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan; (b) the Confirmation Order shall have been duly entered on the docket for the Chapter 11 Cases by the Clerk of the Bankruptcy Court in form and substance acceptable to Reorganized Debtor; and, (c) the Confirmation Order shall be a Final Order.

### A.      Conditions Precedent to Consummation

Consummation of the Plan requires that the following conditions be satisfied (unless waived, as provided below): (a) there shall have been no material adverse changes in the

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

56

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

Debtors prior to the closing of the sale of New Common Stock; (b) the execution and delivery by the Debtors of the documents and agreements, in form and substance satisfactory to the Reorganized Debtor, in its sole discretion; (c) each executory contract and unexpired lease of any Debtor shall have been assumed, rejected or assumed and assigned as determined by the Reorganized Debtor, in its sole discretion, and each such executory contract and unexpired lease shall have been so assumed, rejected or assumed and assigned, as the case may be, by a Final Order satisfactory in form and substance to the Reorganized Debtor; and (d) all payments required to be made by the Effective Date shall be made.

## B. <u>Waiver of Conditions</u>

Reorganized Debtor may waive any of the conditions of the Confirmation and/or Consummation of the Plan, in whole or in part, set forth in the Plan at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of the Plan; provided, however, that Debtors may not waive any conditions of the Plan or the Confirmation Order which would adversely affect any rights and interests under the Plan.

## C. <u>Effect of Nonoccurrence of Conditions to Consummation</u>

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, Debtors; (b) prejudice in any manner the rights of Debtors, or (c) constitute an admission, acknowledgment, offer or undertaking by Debtors in any respects; provided, however, that the Professional Fees allowed by a Final Order shall not be subject to disgorgement.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

57

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

# XIV. RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Chapter 11 Cases having been closed, or Final Decrees having been entered, the Plan contemplates that the Bankruptcy Court will retain and have jurisdiction of matters arising out of, and related to the Chapter 11 Cases and the Plan under, and for the purposes of, Sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code, among other things, to:

A.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

B.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

C.      resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtors are parties or with respect to which Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date to the list of executory contracts and unexpired leases to be rejected;

D.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including ruling on any motion filed pursuant to Article X of the Plan;

E.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving Debtors, the Examiner, or the Creditor Agent, or their affiliates, directors, employees, agents or professionals

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

58

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

that may be pending or filed or commenced after the Effective Date, including proceedings with respect to the rights of the Creditor Agent to recover or collect on any of the Avoidance Actions or Specified Causes of Action;

      F.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

      G.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation of the Plan, interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under Sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

      H.      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

      I.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other Plan provisions and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

      J.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

      K.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

59

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

L.     enter an order and/or final decree concluding the chapter 11 Cases;

M.     consider any modification of the Plan under Section 1127 of the Bankruptcy Code and/or modification of the Plan before "substantial consummation" as defined in Section 1101(2) of the Bankruptcy Code;

N.     protect the property of the Estates from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine a Debtor's exclusive ownership of claims and causes of action retained under the Plan;

O.     hear and determine matters pertaining to abandonment of property of the Estates;

P.     consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

Q.     interpret and enforce any Orders previously entered in the Chapter 11 Cases to the extent such Orders are not superseded or inconsistent with the Plan;

R.     recover all Assets of Debtors and of the Liquidating Creditors Trust and property of the Estates, wherever located;

S.     hear and determine matters concerning state, local, and federal taxes in accordance with Sections 345, 505, and 1146 of the Bankruptcy Code;

T.     hear and act on any other matter not inconsistent with the Bankruptcy Code;

U.     determine and resolve controversies relating to the Creditor Agent;

V.     consider and act on the compromise and settlement of any litigation, Claim against or cause of action on behalf of the Estates; and

W.     interpret and enforce the injunctions contained in the Confirmation Order.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

60

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

## XV.    REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan

satisfies the following requirements of Section 1129 of the Bankruptcy Code:

C    The Plan complies with the applicable provisions of the Bankruptcy Code.

C    The proponents of the Plan comply with the applicable provisions of the Bankruptcy Code.

C    The Plan has been proposed in good faith and not by any means forbidden by law.

C    Any payment made or to be made for services or for costs and expenses in, or in connection with, the Cases, or in connection with the Plan and incident to these Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

C    The Debtors have disclosed the identity and affiliations or any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtors or a successor to the Debtors under the Plan and the appointment to or continuance in such office of such individual is consistent with the interests of Creditors, Interest Holders and with public policy.

C    Each Persons holding a Claim or Interest has either accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code.  This requirement is commonly referred to as the "best interest of creditor test" or the "liquidation analysis."

C    Each Class of Claims or Interests under the Plan has either accepted the Plan or is not impaired under the Plan.  Alternatively, the Plan may be confirmed over the dissent of a Class of Claims or Interests if the "cramdown" requirements of the Bankruptcy Code, codified in section 1129(b) of the Bankruptcy Code, are met

C    Except to the extent that the Holder of a particular Claim against the Debtors has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims (other than Tax Claims) will be paid in full on the Effective Date of the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

61

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

C At least one (1) Class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any Insider (as defined in section 101(31) Bankruptcy Code holding a Claim in such Class).

C Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.  This is commonly referred to as the  "feasibility test."

C All bankruptcy fees have been paid.

C The Plan provides for the continuation of payment of retiree benefits as the term is defined in section 1114 of the Bankruptcy Code.

Debtors believe that the Plan satisfies all of the statutory requirements for confirmation of the Plan.  The more important requirements of section 1129(a) of the Bankruptcy Code area discussed below.

### 1. Acceptances Necessary to Confirm Plan

At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired Class.  Under section 1126 of the Bankruptcy Code, an "impaired" class of claims is deemed to have accepted a plan if the ballots filed by creditors to "accept" the Plan represent at least two-thirds in dollar amount and more than one-half in number of the allowed claims represented by all of the ballots filed by creditors in that Class.  Similarly, an impaired class of interests is deemed to have accepted a plan if the plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed equity interests of such class held by holders of such interests that have accepted or rejected the plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6-04-bk-11050, 6-04-bk-11052-KSJ

62

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

In calculating whether a Creditor or Interest Holder has voted for or against the Plan, the Debtors will not consider ballots which do not properly indicate an acceptance or a rejection.

If you are in any way uncertain whether or not your Claim has been correctly scheduled, you should review Schedules and any amendments thereto which are on file with the Bankruptcy Court. Do not contact the Debtors, the Examiner, their attorneys or Bankruptcy Court staff with inquiries regarding the scheduling of your Claim or Interest. Any information they, or anyone else, may give that is inconsistent with the Schedules themselves is unauthorized, void and of no effect.

2. **Best Interest of Creditors Test**

Confirmation requires, among other things, that each holder of a Claim in an impaired class and each holder of an interest has either: (i) accepted the Plan (unanimous class acceptance); or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the debtor was liquidated in a under Chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test."

a. Chapter 7

To determine the value that the holders of impaired claims and interests would receive if and when the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of its assets and properties in the context of a Chapter 7 liquidation case. Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

63

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the liquidation of any Debtors' assets, augmented by the Cash, if any, held by any Debtor at the time of the commencement of the hypothetical Chapter 7 case(s).  Any such Cash amount would then be reduced by the amount of any claims secured by such assets such as the secured claims of the DIP Lender and the prepetition liens of Public Bank, Sherwood and the Equipment Lenders and Lessors the costs and expenses of the liquidation of the assets and such additional administrative claims and other priority claims that may result from the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under chapter 7 would include fees payable to trustee(s) in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee(s) may engage, plus any unpaid expenses incurred by any Debtor during the chapter 11 cases that would be allowed as a priority in the chapter 7 cases, such as compensation for attorneys, appraisers, accountants or other professionals and costs and expenses of any Debtor and the Examiner.  Such administrative claims would have to be paid in Cash, in full from the liquidation proceeds before the balance of those proceeds could be made available to pay other Priority Claims and Allowed Unsecured Claims from the Cases.

b.      Liquidation Alternative

**Exhibit "B"** hereto sets forth the Debtors' best estimate of the reasonable liquidation values for each Debtor's Estate based upon their books and records, Debtors' experience within its industry, and evaluation of likely recoveries as explained and qualified in the accompanying documents.  As is evident from the calculations set forth in **Exhibit B**, the Plan will yield a greater recovery for all Creditors than a liquidation under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, the only payments that would be made,

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

64

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

based on the structure of current debt, would be to the DIP Lender and the various holders of prepetition Secured Claims.

### 3. Feasibility of Plan

Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to confirmation, that the Bankruptcy Court find that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Debtor or any successor to Reorganized Debtor under the plan, unless such liquidation or reorganization is proposed under the plan. This requirement is called "feasibility."

Debtors have based the projections in **Exhibit "A"** on several assumptions. The primary factors that will determine the feasibility of Debtors' Plan are the (i) the Funds from the Cash on Confirmation; and (ii) the viability of the projections of the Debtors over the five year period outlined in **Exhibit A.** With the recent results and continuing impact of the above noted improvements, Debtors believe that they will be able to continue to generate significant operating revenues in an amount that will assure their ability to fund the Plan, and hence to assure that the Plan is feasible.

### 4. Classification

In accordance with Bankruptcy Code Section 1122, the Plan provides for eight (8) Classes of Claims. Section 1122(a) permits a plan to place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. The Debtors believe that the classification of Claims and Interests under the Plan is appropriate and consistent with applicable law.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

65

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

5.      **Confirmation of Plan without Necessary Acceptances; Cramdown**

A COURT MAY CONFIRM A PLAN, EVEN IF IT IS NOT ACCEPTED BY ALL IMPAIRED CLASSES, IF THE PLAN HAS BEEN ACCEPTED BY AT LEASE ONE IMPAIRED CLASS OF CLAIMS AND THE PLAN MEETS THE "CRAMDOWN" REQUIREMENTS SET FORTH IN SECTION 1129(b) OF THE BANKRUPTCY CODE.  SECTION 1129(b) OF THE BANKRUPTCY CODE REQUIRES THAT THE COURT FIND THAT A PLAN IS "FAIR AND EQUITABLE" AND DOES NOT "DISCRIMINATE UNFAIRLY" WITH RESPECT TO EACH NONACCEPTING IMPAIRED CLASS OF CLAIMS OR INTERESTS.

IN THE EVENT THAT ANY IMPAIRED CLASS REJECTS THE PLAN IN ACCORDANCE WITH SECTION 1129(a)(8) OF THE BANKRUPTCY CODE, AND AT LEAST ONE IMPAIRED CLASS HAS VOTED TO ACCEPT THE PLAN, DEBTORS INTEND TO REQUEST THAT THE BANKRUPTCY COURT CONFIRM THE PLAN IN ACCORDANCE WITH THE "CRAMDOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE OR MODIFY THE PLAN IN ACCORDANCE WITH THE TERMS THEREOF.

The Plan provides for the possibility of invoking the cramdown provisions as defined in Section 1129(a) of the Bankruptcy Code.  Under this provision the Court has the authority to confirm the Plan even though a Class of Claims which is impaired does not vote to accept the Plan (so long as at least one other Class of impaired claims has accepted the Plan).

a.      No Unfair Discrimination

With respect to a dissenting class of interests, the "fair and equitable" standard required that the plan contain one of  two elements.  It must provide either (i)

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

66

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

that each holder of an interest in the class receive or retain property having a value, as of the effective date, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, or the value of such interests or (ii) that no holder of an interest in any junior class receive or retain any property on account of such interests.  The strict requirement of the allocation of full value to dissenting classes before junior classes can receive distribution is known as the "absolute priority rule."

Debtors believe that under the Plan: (i) all impaired Classes of Claims and Interests are treated in a manner that is consistent with the treatment of other Classes of Claims and Interests with which their legal rights are intertwined, if any; and (ii) no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Although the substantive consolidation of the Estates, as provided for under the Plan, may raise the risk of unfair discrimination, Debtors believe that such risk is only theoretical and speculative and that no unfair discrimination results from substantive consolidation for the reasons discussed in Article VIII(D)(4) hereof.  Accordingly, Debtors believe that the Plan does not discriminate unfairly as to any impaired class.

b.      Fair and Equitable Test

The Bankruptcy Code establishes different "fair and equitable" tests for holders of secured claims, unsecured claims and interests as follows:

(i)      Secured Claims

Either: (i) each holder of a secured claim (x) retains the lien securing its secured claims and receives on account of its allowed secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, or (y) realizes

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

67

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

the "indubitable equivalent" of its allowed secured claim; or (ii) the property securing the claim

is sold free and clear of liens, with such liens attaching to the proceeds, and the liens against

such proceeds are treated in accordance with clause (i)

        (ii)     Unsecured Claims

        Either: (i) each holder of an unsecured claim receives or

retains under the plan property of a value equal to the amount of its allowed claim; or (ii) the

holders of claims and interests that are junior to the claims or the nonaccepting class do not

receive any property under the plan on account of such claims and interests.

        (iii) Equity Interests

        Either: (i) such holder of an interest receives or retains

property of a value equal to the greater of any fixed liquidation preference or fixed redemption

price to which such holder is entitled, or the value of the interest; or (ii) the holder of any

interests junior to the interests in the impair class will not receive or retain any property under

the plan.

        **THE CRAMDOWN PROVISIONS OF THE BANKRUPTCY CODE ARE**

**COMPLEX AND THIS SUMMARY IS NOT INTENDED TO BE A COMPLETE**

**STATEMENT OF THE LAW IN THIS AREA.**

**XVI.**   **EFFECT OF CONFIRMATION**

     **A.**    **Binding Effect of Confirmation**

        Confirmation of the Plan will legally bind Debtors, the Reorganized Debtor, all

Creditors, Interest Holders and other Parties in Interest to the provisions of the Plan whether or

not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or

Interest Holder voted to accept the Plan.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

68

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**B.**     <u>Vesting of Assets Free and Clear of Liens, Claims and Interests</u>

Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, title to all assets and property of the Debtors and all property of their respective Estates, including, pursuant to Section 1123(b)(3)(b) of the Bankruptcy Code, each and every claim, demand or cause of action which Debtors had or had power to assert immediately prior to Confirmation, will revest in the Debtors, free and clear of all Liens, Claims and Interests, except as provided in the Plan. Thereafter, the Reorganized Debtor will hold these assets without further jurisdiction, restriction or supervision of the Bankruptcy Court except as may be provided in Section XV of the Disclosure Statement.

**C.**     <u>Good Faith</u>

Confirmation of the Plan shall constitute a finding that the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**D.**     <u>Discharge of Claims</u>

The rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims. Confirmation of the Plan shall discharge Debtors from all Claims that arose before the Confirmation Date and all Claims of all kinds specified in Sections 502(g), (h) and (i) of the Bankruptcy Code, whether or not a proof of Claim is filed or deemed filed, and whether or not a Creditor has accepted the Plan.

**E.**     <u>Judicial Determination of Discharge</u>

As of the Confirmation Date, except a provided in the Plan, all Persons shall be precluded from asserting against Debtors any other or further Claims, debts, rights, causes of action, liabilities, or equity interests based on any act, omission, transaction or other activity of

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

any kind or nature that occurred before the Confirmation Date, and the Confirmation Order shall be a judicial determination of discharge of all Claims against Debtors pursuant to Sections 524 and 1141 of the Bankruptcy Code, and shall void any judgment obtained or entered against Debtors at any time, to the extent the judgment relates to discharged Claims.

## F.  **Injunction**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Cases pursuant to Sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation date, shall remain in full force and effect until the Effective Date.  From and after the Effective Date, all Persons are permanently enjoined from and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (a) any Debtor, (b) the property of any Debtor, (c) the Examiner, or (d) the Reorganized Debtor liable for any claim, obligation, right, interests, debt or liability that has been discharged or released pursuant to Article XXI, of the Plan.

As of the Effective Date, the Debtors and the Estates shall release each attorney, accountant or other professional employed by the Debtors in these Cases, from any and all causes of action, claim, liabilities, counterclaims and damages relating in any manner to such professional's or other released individuals' participation in the Cases.  The releases and injunctions set forth herein: (i) only apply to post-petition transactions or occurrences; and (2) do not release any party who may be liable with the Debtors to any party on account of any debt for which the Debtors receive a discharge.

## XVII.  **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN IN GENERAL**

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

70

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

THE FOLLOWING DISCUSSION IS A SUMMARY OF CERTAIN MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO HOLDERS OF CLAIMS AND INTERESTS IN DEBTORS, BUT IS NOT A COMPLETE DISCUSSION OF ALL SUCH CONSEQUENCES. CERTAIN OF THE CONSEQUENCES DESCRIBED BELOW ARE SUBJECT TO SUBSTANTIAL UNCERTAINTY DUE TO THE UNSETTLED STATE OF THE TAX LAW GOVERNING BANKRUPTCY REORGANIZATIONS. NO RULINGS HAVE BEEN OR WILL BE REQUESTED FROM THE INTERNAL REVENUE SERVICE (THE "IRS") WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. FURTHER, THE TAX CONSEQUENCES OF THE PLAN TO THE HOLDERS OF CLAIMS AND INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER, AND MAY BE AFFECTED BY MATTERS NOT DISCUSSED BELOW, SUCH AS THE SPECIAL RULES APPLICABLE TO CERTAIN TYPES OF HOLDERS (INCLUDING PERSONS SUBJECT TO SPECIAL RULES, SUCH AS, FOR EXAMPLE, NONRESIDENT ALIENS, LIFE INSURANCE COMPANIES AND TAX-EXEMPT ORGANIZATIONS). IN ADDITION, THERE MAY BE STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES OF THE PLAN APPLICABLE TO PARTICULAR HOLDERS OF CLAIMS OR INTERESTS, NONE OF WHICH ARE DISCUSSED BELOW. THEREFORE, THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST, AND EACH HOLDER OF A CLAIM OR INTEREST IN DEBTORS IS URGED TO CONSULT HIS, HER OR ITS TAX ADVISORS CONCERNING THE INDIVIDUAL TAX

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6/04-bk-11050, 6/04-bk-11052-KSJ

71

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

This summary discusses certain federal income tax consequences which may be expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Code"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the IRS, any of which may be altered with retroactive effect, thereby changing the federal income tax consequences discussed below. There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought by the Debtors.

The tax treatment of a holder of an Allowed Unsecured Claim may vary depending upon such holder's particular situation. Certain holders (including insurance companies, tax-exempt organizations, financial institutions, brokers-dealers, foreign corporations and persons who are not citizens or residents of the United States) may be subject to special rules not discussed below.

A.      <u>Tax Consequences To Holders Of Claims</u>.

A portion of the consideration received pursuant to the Plan in payment of a Claim may be allocated to unpaid interest, and the remainder of the consideration will be allocated to the principal amount of the Claim. The tax consequences of the consideration allocable to the portion of a Claim related to interest differs from the tax consequences of the consideration allocable to the portion of a Claim related to principal.

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

72

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

**B.**     **Consideration Allocable To Interest.**

Holders of Claims will recognize ordinary income to the extent that any consideration received pursuant to the Plan is allocable to interest, and such income has not already been included in such Holder's taxable income. The determination as to what portion of the consideration received will be allocated to interest is unclear, and may be affected by, among other things, rules in the Code relating to original issue discount and accrued market discount. Holders of Claims should consult their own tax advisors as to the amount of any consideration received under the Plan that will be allocated to interest.

In the event amounts allocable to interest are less than amounts previously included in the Holder's taxable income, the difference will result in a loss. Any amount not allocable to interest will be allocated to the principal amount of the Claim paid and discharged pursuant to the Plan, and will be treated as discussed below.

**C.**     **Consideration Allocable to Principal.**

Holders of Claims receiving cash generally will recognize gain or loss on the exchange equal to the difference between the Holder's basis in the Claim and the amount of cash received that is not allocable to interest. The character of any recognized gain or loss will depend upon the status of the Holder, the nature of the Claim in its hands and the holding period of such Claim.

If a Holder of a Claim has treated a Claim as wholly or partially worthless and been allowed a bad debt deduction, the Holder will include the amount of cash received in income to the extent such cash exceeds the Holder's remaining tax basis in the Claim.

Holders of Claims may be entitled to installment sales treatment or other deferral with respect to the distribution they receive subsequent to the Effective Date. Holders of Claims

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

73

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

may already have claimed partial bad debt deductions with respect to their Claims. The IRS may take the position that Holders of Allowed Claims cannot claim an otherwise allowable further loss in the year in which their Claim is allowed because such claimants could receive further distributions. Thus, a Holder of a Claim could be prevented from recognizing a loss until the time when its Claim has been liquidated and distributions have been completed. If a Holder of a Claim is permitted to recognize a loss in the year of the Effective Date by treating the transaction as a "closed transaction" at such time, such Holder may recognize income on any subsequent distribution.

Creditors should consult with their own tax advisors as to the matters discussed in this Section concerning character and timing of recognition of gain or loss. Because a loss will be allowed as a deduction only for the taxable year in which the loss was sustained, a Creditor that claims a loss in the wrong taxable year risks denial of such loss altogether. In the case of certain categories of Claims, consideration should be given to the possible availability of a bad debt deduction under Section 166 of the Code for a period prior to the Effective Date. In addition, a portion of any distributions received after the Effective Date may be taxed as ordinary income under the imputed interest rules.

## XVIII. ALTERNATIVES TO PLAN

Debtors believe that, if the Plan is not confirmed or is not confirmable, the alternatives to the Plan include (a) the conversion to Chapter 7 cases and concomitant liquidation of Debtors' assets on a "forced sale" basis, (b) dismissal of the case(s), or (c) an alternative plan of reorganization.

### A. Liquidation Under Chapter 7

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

74

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

If no plan can be confirmed, Debtors cases may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the assets of Debtors for distribution to Creditors and Interest Holders in accordance with the priorities established by the Bankruptcy Code. For the reasons previously discussed above, Debtors believe that Confirmation of the Plan will provide each Holder of an Unsecured claim entitled to receive a Distribution under the Plan with a recovery that is expected to be substantially more than it would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

**B.** **Dismissal**

Dismissal of the Case(s) would leave all Holders of Allowed Secured Claims in a position to exercise their state law rights under their existing securities interest including foreclosure of such liens. Debtors believe that in a dismissal scenario only such parties would realize any recovery.

**C.** **Alternative Plan**

Debtors believe any alternative Plan would not result in as favorable of treatment of Claims and Interests as proposed under the Plan.

**D.** **No _Res Judicata_ Effect**

Notwithstanding anything to the contrary in the Plan or in this Disclosure Statement, the provisions of this Disclosure Statement and the Plan which permits Debtors to enter into settlements and compromises of any potential litigation shall not have and are not intended to have any _res judicata_ effect with respect to any prepetition claims and causes of action that are not otherwise treated under the Plan and shall not be deemed a bar to asserting such claims and causes of action. Debtors shall have the authority to settle claims and litigation

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11049, 6:04-bk-11050, 6:04-bk-11052-KSJ

75

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

as provided in the Plan, provided that all such settlements shall nevertheless be subject of the settlement standards imposed by Bankruptcy Rule 9010 and the standards set forth in *In re Justice Oaks II, Ltd.*, 898 F. 2d 1544, 1549 (11th Cir. 1990), cert den. 498 U.S. 959, 1126 L. Ed. 2d 398,111 S. Ct. 389 (1990).

## XIX.  RECOMMENDATION

Debtors believe confirmation and consummation of the Plan is preferable to all other alternatives.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6/04-bk-11049, 6-04-bk-11050, 6-04-bk-11052-KSJ

76

U:\Bkry\JapPac\Pld\Amended Disclosure Stmt 5-6-05.wpd

## XXII. CONCLUSION

THEREFORE, DEBTORS URGE CREDITORS TO ACCEPT THE PLAN AND
TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR PROPERLY
COMPLETED BALLOTS SO THAT THEY WILL BE ACTUALLY RECEIVED BY
THE BANKRUPTCY COURT CLERK BY THE DATE SET FORTH ON THE BALLOT.

Dated: May 6, 2005

R. Scott Shuker, Esq.
Florida Bar No. 0984469
Mariane L. Dorris, Esq.
Florida Bar No. 0173665
**GRONEK & LATHAM, LLP**
390 N. Orange Ave., Suite 600
P.O. Box 3353
Orlando, Florida 32802
Attorneys for Debtors and
Debtors-in-Possession

**DEBTORS AND DEBTORS-IN-POSSESSION**

**Japan Pacific Trading Corporation.**

By:
Its:    PRESIDENT

**Florida Select Citrus, Inc.**

By:
Its:    PRESIDENT

**American Mercantile Corporation**

By:
Its:    PRESIDENT

In re: Japan Pacific Trading Corp., Florida Select Citrus Inc.
& American Mercantile Corporation
Case Nos. 6:04-bk-11043, :04-bk-11046, :04-bk-11053-KSJ

U:\Bky\...\Amended Disclosure Stmt 5-6-05.wpd

## AMERICAN MERCANTILE CORPORATION

### 2005

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 40,382.32 | 9,882.32 | 29,882.32 | 24,882.32 | 39,882.32 | 66,882.32 | 63,882.32 | 60,882.32 | 52,882.32 | 41,882.32 | 27,882.32 | 16,882.32 |
| Cash In | 129,000.00 | 160,000.00 | 140,000.00 | 160,000.00 | 180,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 |
| Total Available | 169,382.32 | 169,882.32 | 169,882.32 | 184,882.32 | 219,882.32 | 266,882.32 | 263,882.32 | 260,882.32 | 252,882.32 | 241,882.32 | 227,882.32 | 216,882.32 |

| Expenses | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 110,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Utilities | 15,000.00 | 10,000.00 | 5,000.00 | 3,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 5,000.00 | 5,000.00 | 8,000.00 | 10,000.00 | 10,000.00 |
| Restock/Supplies | 12,000.00 | 10,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Fertilizer/Chemicals | 8,000.00 | 4,000.00 | 4,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 4,000.00 | 2,000.00 |
| Fuel | 8,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 8,000.00 | 8,000.00 |
| Insurance/Tax | 6,500.00 | 5,000.00 | 5,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 |
| Greenhouse/Expansion | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 5,000.00 | 5,000.00 |
| Total Expenses | 159,500.00 | 140,000.00 | 145,000.00 | 145,000.00 | 153,000.00 | 153,000.00 | 153,000.00 | 158,000.00 | 161,000.00 | 164,000.00 | 161,000.00 | 159,000.00 |

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Repayment | | | | | 66,882.32 | | | | | | | |
| Ending Cash | 9,882.32 | 29,882.32 | 24,882.32 | 39,882.32 | 66,882.32 | 63,882.32 | 60,882.32 | 52,882.32 | 41,882.32 | 27,882.32 | 16,882.32 | 7,882.32 |
| DIP Loan Balance | 24,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | | | | | | | | |

Exhibit A

2006

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 7,882.32 | (10,117.68) | (23,117.68) | (16,117.68) | (16,117.68) | (14,117.68) | (2,117.68) | (117.68) | 1,882.32 | 3,882.32 | 5,882.32 | 9,882.32 |
| Cash In | 200,000.00 | 200,000.00 | 220,000.00 | 220,000.00 | 220,000.00 | 230,000.00 | 220,000.00 | 220,000.00 | 220,000.00 | 220,000.00 | 220,000.00 | 220,000.00 |
| Total Available | 207,882.32 | 189,882.32 | 196,882.32 | 203,882.32 | 203,882.32 | 215,882.32 | 217,882.32 | 219,882.32 | 221,882.32 | 223,882.32 | 225,882.32 | 229,882.32 |
| Expenses | January | February | March | April | May | June | July | August | September | October | November | December |
| Payroll | 110,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Utilities | 11,000.00 | 10,000.00 | 7,000.00 | 4,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Restock/Supplies | 10,000.00 | 10,000.00 | 10,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Fertilizer/Chemicals | 2,200.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 4,000.00 | 2,000.00 |
| Fuel | 8,800.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| Insurance/Tax | 16,000.00 | 16,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 |
| Greenhouse/Expansion | 10,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Total Expenses | 168,000.00 | 163,000.00 | 163,000.00 | 170,000.00 | 168,000.00 | 168,000.00 | 168,000.00 | 168,000.00 | 168,000.00 | 168,000.00 | 168,000.00 | 168,000.00 |
| Loan Repayment | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| Ending Cash | (10,117.68) | (23,117.68) | (16,117.68) | (16,117.68) | (14,117.68) | (2,117.68) | (117.68) | 1,882.32 | 3,882.32 | 5,882.32 | 9,882.32 | 11,882.32 |
| DIP Loan Balance | | | | | | | | | | | | |

Exhibit A

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 11,882.32 | (3,517.68) | (8,417.68) | (13,317.68) | (12,767.68) | (10,117.68) | 1,532.32 | 23,182.32 | 44,832.32 | 61,482.32 | 70,832.32 | 77,282.32 |
| Cash In | 230,000.00 | 230,000.00 | 230,000.00 | 230,000.00 | 230,000.00 | 230,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 240,000.00 |
| Total Available | 241,882.32 | 226,482.32 | 221,582.32 | 216,682.32 | 217,232.32 | 219,882.32 | 241,532.32 | 263,182.32 | 284,832.32 | 301,482.32 | 310,832.32 | 317,282.32 |

| Expenses | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 115,500.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 | 105,000.00 |
| Utilities | 11,550.00 | 10,500.00 | 7,350.00 | 4,200.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 7,100.00 | 12,100.00 | 17,100.00 | 21,300.00 |
| Restock/Supplies | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 |
| Fertilizer/Chemicals | 2,310.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 4,200.00 | 2,100.00 |
| Fuel | 9,240.00 | 6,300.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 6,300.00 | 6,300.00 | 6,300.00 |
| Insurance/Tax | 16,800.00 | 16,800.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 | 19,950.00 |
| Greenhouse/Expansion | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Total Expenses | 195,400.00 | 184,900.00 | 184,900.00 | 179,450.00 | 177,350.00 | 168,350.00 | 168,350.00 | 168,350.00 | 173,350.00 | 183,350.00 | 183,550.00 | 185,650.00 |

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Repayment | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| Ending Cash | (3,517.68) | (8,417.68) | (13,317.68) | (12,767.68) | (10,117.68) | 1,532.32 | 23,182.32 | 44,832.32 | 61,482.32 | 70,832.32 | 77,282.32 | 81,632.32 |
| DIP Loan Balance | | | | | | | | | | | | |

Exhibit A

**2008**

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 81,632.32 | 56,962.82 | 43,317.82 | 29,672.82 | 21,750.32 | 26,032.82 | 39,765.32 | 53,497.82 | 72,230.32 | 85,712.82 | 91,530.32 | 94,302.82 |
| Cash In | 235,000.00 | 235,000.00 | 230,000.00 | 230,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 |
| Total Available | 316,632.32 | 291,962.82 | 273,317.82 | 259,672.82 | 261,750.32 | 266,032.82 | 279,765.32 | 298,497.82 | 317,230.32 | 330,712.82 | 336,530.32 | 339,302.82 |
| **Expenses** | **January** | **February** | **March** | **April** | **May** | **June** | **July** | **August** | **September** | **October** | **November** | **December** |
| Payroll | 121,275.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 | 110,250.00 |
| Utilities | 17,127.00 | 16,025.00 | 7,717.50 | 4,410.00 | 2,205.00 | 2,205.00 | 2,205.00 | 2,205.00 | 7,455.00 | 12,705.00 | 17,955.00 | 22,365.00 |
| Restock/Supplies | 31,500.00 | 31,500.00 | 31,500.00 | 31,500.00 | 31,500.00 | 22,050.00 | 22,050.00 | 22,050.00 | 22,050.00 | 22,050.00 | 22,050.00 | 22,050.00 |
| Fertilizer/Chemicals | 2,425.50 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 | 6,615.00 |
| Fuel | 9,702.00 | 6,615.00 | 4,200.00 | 4,200.00 | 4,200.00 | 4,200.00 | 4,200.00 | 4,200.00 | 4,200.00 | 6,615.00 | 6,615.00 | 6,615.00 |
| Insurance/Tax | 17,640.00 | 17,640.00 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 | 20,947.50 |
| Greenhouse/Expansion | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Total Expenses | 209,669.50 | 198,645.00 | 193,645.00 | 187,922.50 | 185,717.50 | 176,267.50 | 176,267.50 | 176,267.50 | 181,517.50 | 189,182.50 | 192,227.50 | 194,432.50 |
| Loan Repayment | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| Ending Cash | 56,962.82 | 43,317.82 | 29,672.82 | 21,750.32 | 26,032.82 | 39,765.32 | 53,497.82 | 72,230.32 | 85,712.82 | 91,530.32 | 94,302.82 | 94,870.32 |
| DIP Loan Balance | | | | | | | | | | | | |

Exhibit A

2009

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 94,870.32 | 68,292.35 | 53,290.09 | 43,537.84 | 39,794.22 | 38,365.84 | 48,784.97 | 59,204.09 | 79,623.22 | 94,529.85 | 105,388.22 | 115,049.35 |
| Cash In | 240,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 240,000.00 | 250,000.00 | 250,000.00 | 260,000.00 | 260,000.00 | 265,000.00 | 265,000.00 | 265,000.00 |
| Total Available | 334,870.32 | 308,292.35 | 293,290.10 | 283,537.85 | 279,794.22 | 288,365.85 | 298,784.97 | 319,204.10 | 339,623.22 | 359,529.85 | 371,388.22 | 380,049.35 |

| Expenses | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 127,338.75 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 | 115,762.50 |
| Utilities | 17,983.35 | 16,826.25 | 8,103.38 | 4,630.50 | 2,315.25 | 2,315.25 | 2,315.25 | 7,827.75 | 13,340.25 | 18,852.75 | 23,483.25 | 23,483.25 |
| Restock/Supplies | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 23,152.50 | 23,152.50 | 23,152.50 | 23,152.50 | 23,152.50 | 23,152.50 | 23,152.50 |
| Fertilizer/Chemicals | 2,546.78 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 | 6,945.75 |
| Fuel | 10,187.10 | 6,945.75 | 4,410.00 | 4,410.00 | 4,410.00 | 4,410.00 | 4,410.00 | 4,410.00 | 4,410.00 | 6,945.75 | 6,945.75 | 6,945.75 |
| Insurance/Tax | 18,522.00 | 18,522.00 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 | 21,994.88 |
| Greenhouse/Expansion | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Total Expenses | 216,577.98 | 205,002.25 | 199,752.25 | 193,743.63 | 191,428.38 | 189,580.88 | 189,580.88 | 189,580.88 | 195,063.38 | 203,141.63 | 208,338.88 | 208,654.13 |

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Repayment | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| Ending Cash | 68,292.35 | 53,290.09 | 43,537.84 | 39,794.22 | 38,365.84 | 48,784.97 | 59,204.09 | 79,623.22 | 94,529.85 | 106,388.22 | 115,049.35 | 121,395.22 |
| DIP Loan Balance | | | | | | | | | | | | |

Exhibit A

## 2010

| | January | February | March | April | May | June |
|---|---|---|---|---|---|---|
| Beginning Cash | 121,395.22 | 109,738.35 | 110,235.98 | 119,892.64 | 135,858.35 | 154,255.08 |
| Cash In | 265,000.00 | 265,000.00 | 265,000.00 | 265,000.00 | 265,000.00 | 270,000.00 |
| Total Available | 386,395.22 | 374,738.35 | 375,235.98 | 384,892.64 | 400,858.35 | 424,255.08 |

| Expenses | January | February | March | April | May | June |
|---|---|---|---|---|---|---|
| Payroll | 133,705.69 | 121,550.63 | 121,550.63 | 121,550.63 | 121,550.63 | 121,550.63 |
| Utilities | 18,882.52 | 17,667.56 | 8,508.54 | 4,862.03 | 2,431.01 | 2,431.01 |
| Restock/Supplies | 26,250.00 | 26,250.00 | 26,250.00 | 26,250.00 | 26,250.00 | 24,310.13 |
| Fertilizer/Chemicals | 2,674.11 | 7,293.04 | 7,293.04 | 7,293.04 | 7,293.04 | 7,293.04 |
| Fuel | 10,696.46 | 7,293.04 | 7,293.04 | 4,630.50 | 4,630.50 | 4,630.50 |
| Insurance/Tax | 19,448.10 | 19,448.10 | 19,448.10 | 19,448.10 | 19,448.10 | 19,448.10 |
| Greenhouse/Expansion | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Total Expenses | 226,656.87 | 214,502.36 | 205,343.34 | 199,034.29 | 196,603.28 | 194,663.40 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Loan Repayment | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| Ending Cash | 109,738.35 | 110,235.98 | 119,892.64 | 135,858.35 | 154,255.08 | 179,591.68 |
| DIP Loan Balance | | | | | | |

Exhibit A

## EXHIBIT "B"

### AMERICAN MERCANTILE CORPORATION
Case No.:6-04-bk-11052-KSJ

### LIQUIDATION ANALYSIS

| | Estimated Liquidation Value as of 01/31/05 |
|---|---|
| **Assets** | |
| Cash | $10,000 |
| Accounts Receivable | $50,000 |
| Inventory | $2,000,000 |
| TOTAL ASSETS FOR DISTRIBUTION | $2,060,000 |
| | |
| Secured Debt | $19,500,000 |
| Administrative Expenses: Chapter 7 | $61,000 |
| Administrative Expenses: Chapter 11 | $100,000 |
| AVAILABLE FOR UNSECURED CREDITORS | $0 |