# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                          CASE NO. 6-04-bk-11052-KSJ

AMERICAN MERCANTILE, INC.,                      CHAPTER 11
a Florida corporation,

                        Debtor.
_____/

## AFFIDAVIT OF  JULIAN M. BENSCHER IN SUPPORT OF CONFIRMATION

STATE OF FLORIDA          )
                          )SS:
COUNTY OF ORANGE          )

Before me personally appeared Julian M. Benscher, who, after being duly sworn, deposed and said:[1]

1.      I am the President of Japan Pacific Trading Corporation, Florida Select Citrus, Inc., and American Mercantile Corporation and have held that position since July 15, 2004.

2.      I have firsthand knowledge and am familiar with the matters described herein including (a) Debtors' Amended Disclosure Statement, dated May 6, 2005, (the "Disclosure Statement"); and (b) the Debtors' Amended Plan of Reorganization, dated May 6, 2005, which may be modified prior to the Confirmation Hearing (the "Plan").

3.      Japan Pacific is a California corporation which was authorized to do business in Florida, with its principal place of business in Groveland.  Florida Select is a Florida corporation, incorporated on October 23, 1990, authorized to do business in Florida, with its principal place of business in Groveland.  On or about October 26, 1990, Japan Pacific acquired

---

[1]      Terms capitalized in this affidavit shall have the same meaning as used in Debtors' Amended Plan of Reorganization, dated as of May 6, 2005, as may be modified, unless such terms are defined differently herein.

all of the outstanding stock in Florida Select.  Pre-petition, Japan Pacific and Florida Select

operated an orange and grapefruit juice processing and packaging plant ("Packaging Plant"), on

approximately 40 acres of land located in the center of Groveland, Florida.  Japan Pacific and

Florida Select also own approximately 240 acres of orange and grapefruit groves located

approximately one (1) mile south of the Packaging Plant.  Mr. Tominaga and the probate estate

of Mr. Tominaga's deceased spouse nominally own 100% of Japan Pacific.  However, pursuant

to voting-pledge agreements, Sherwood Investments (Overseas) Ltd., a company organized and

existing under the laws of the British Virgin Islands ("Sherwood"), has full voting control of

Japan Pacific.  Julian Benscher is the current president, treasurer and director of Japan Pacific

and Florida Select, and George Roat is the current secretary and director of Japan Pacific and

Florida Select.  Mr. Benscher is the authorized signatory with full power-of-attorney for

Sherwood.  Sherwood is owned by a trust for the benefit of certain family members of Mr.

Benscher; however, Mr. Benscher is not a beneficiary of this trust.

     4.     AMC was originally incorporated as a California corporation on August 25, 1960.

On or about July 1, 1990, Japan Pacific assumed control of the business operations and

management of AMC.  On or about September 28, 1998, AMC merged and became a Florida

corporation, with its principal place of business in Groveland.  AMC cultivates and sells orchids

to wholesalers and flea markets.  Mr. Tominaga and the probate estate of his deceased spouse

nominally own 100% of AMC; however, Sherwood has full voting control. Julian Benscher is

the current president, treasurer and director of AMC, and George Roat is the current secretary

and director of AMC.

5.     Since the Petition Date, the Debtors have been continuing to operate their

businesses and manage their properties as debtors-in-possession under Sections 1101(a) and

1108 of the Code.

### Significant Events Subsequent to Filing Chapter 11 Petitions

6.     To make the transition into the Chapter 11 Cases a fluid one, with the least

amount of disruption to the current operations, the Debtors obtained several first day orders (the

"First Day Orders") authorizing compensation of officers and short-term use of cash collateral.

Since the entry of the Orders for Relief, Debtors have filed and prosecuted numerous motions as

in their business judgment are necessary to allow for the continued smooth and efficient

operation of their business during the course of the Chapter 11 Cases, including, but not limited

to:

a.     Loans to Debtors in Possession ("DIP Loan") and Use of Cash Collateral

On or about October 8, 2004, Florida Select and AMC filed Emergency

Motions to Use Cash Collateral ("Cash Collateral Motions").  On November 9, 2004, the Court

entered Interim Cash Collateral Orders: (i) authorizing the use of Cash Collateral; (ii) granting

Public Bank and Sherwood replacement liens to the same extent and with the same validity and

priority as their respective prepetition liens *nunc pro tunc* to the Petition Date; and (iii)

scheduling a final hearing.  At the final hearing, the Court orally granted the Cash Collateral

Motions: (i) approving the use of Cash Collateral; (ii) and granting Adequate Protection to

Public Bank and Sherwood.

On or about October 12, 2004, Florida Select and AMC filed Emergency

Motions to Obtain Credit and Incur Debt ("DIP Motions").  In the DIP Motions, Florida Select

and AMC requested a post-petition loan pursuant to 11 U.S.C. §364(c) and (d) to cover operating expenses and certain repairs. Sherwood agreed to extend a post-petition loan, as a future advance, in the combined amount of $180,000.00 (the "DIP Loan") to fund post-petition operations in return for a super priority administrative claim in the full amount of the DIP Loan, plus accrued interest. Moreover, the DIP Loan would be secured to the same extent as Sherwood's prepetition loan. The Court entered orders granting the DIP Motions.

      b.      Appointment of Examiner

On November 30, 2004, the Court entered an order appointing an examiner to review the operations of the Debtors and the secured claims of Public Bank and Sherwood. On December 2, 2004, the Court entered an order approving the application of Michael Moecker as the Chapter 11 Examiner ("Examiner"). After meeting with representatives of the Debtors, parties in interest, and interested parties, and investigating the business activities, assets and potential legal issues and causes of action with respect to each Debtor, the Examiner issued his First Report and Statement of Investigation on February 7, 2005 ("Examiner's Report").[2] As more fully set forth in the Examiner's Report, the Examiner made several conclusions and recommendations with respect to the potential reorganization of the Debtors.

Primarily, the Examiner found no evidence of intentional wrongdoing by the Debtors or their current principals subsequent to the Petition Date. The Examiner believes that the business operations of AMC with respect to the orchid cultivation and sales is a viable and on-going business. Furthermore, the Examiner estimates the value of the 37.5 +/- acre site

---

[2] The Examiner's Report appears at docket entry number 109 in the case styled *In re Japan Pacific Trading Corporation*, Case No. 6:04-bk-11049-KSJ, docket entry number 171 in the case styled *In re Florida Select Citrus Inc.*, Case No. 6:04-bk-11050-KSJ, and docket entry number 132 in the case styled *In re American Mercantile Corporation*, Case No. 6:04-bk-11052-KSJ.

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

4

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

comprising the former processing plant of Florida Select and the 3.5 +/- acres comprising the

CSX frontage property as having a potential value between $5 and $7 million, and the 268 +/-

acres in the Green Swamp used for orchid growing by AMC as having a potential value between

$500,000.00 and $1 million.

        c.     <u>Florida Select Sale</u>

On or about October 2004, Silver Springs Inc. ("Silver Springs"),

Florida Select and Japan Pacific began negotiations for the purchase of the processing equipment

owned by Florida Select and for the lease of the Packaging Plant owned by Japan Pacific for two

years ("Florida Select Sale").  To that end, Florida Select and Japan Pacific agreed to a lease

agreement with Silver Springs to lease the real and certain personal property associated with the

Packaging Plant to Silver Springs. On November 10, 2004 Japan Pacific and Florida Select filed

a Motion for Authority to Lease Property of the Estate and Enter Post-Petition Lease Agreement

(Doc. Nos. 37 and 55).

The terms of the Florida Select Sale provide for lease of the Packaging

Plant to Silver Springs for a period of two (2) years and for Silver Springs to pay monthly lease

payments in the amount of $4,166.00.  Silver Springs is also responsible for all business

expenses including post-petition lease payments and insurance**.**  In addition to the lease

transaction, Florida Select has also agreed to an asset purchase agreement with Silver Springs to

sell all tangible personal property associated with the Packaging Plant to Silver Springs for the

sum of $1,000,000.00.

After having failed to receive a more competitive bid for the lease of the

Packaging Plant and the purchase of the associated equipment pursuant to the Motion for

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

5

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

Approval of Sale Procedures and Bidding Protections[3], the Bankruptcy Court entered an order on

January 5, 2005, Granting the Debtor's Motion to Sell Debtor's Assets Free and Clear of Liens,

Claims and Encumbrances and Exemption of Sale from Stamp or Other Similar Taxes[4].

Subsequently thereafter, on January 28, 2005 the Florida Select Sale closed.

        d.      <u>Tominaga and Toole Adversaries</u>

        (i)  In November 2004, Debtors filed a complaint against Yasuhiko

Tominaga seeking to except Tominaga's debt to Debtors from discharge and deny

Tominaga a discharge.

        (ii)  In April 2005, Debtors filed a complaint against Richard Toole

seeking turnover of property of the estate, seeking to avoid a preferential transfer, and

seeking to avoid and recover  actual and constructively fraudulent conveyances,

specifically, 3.7 acres of land located in Groveland, Florida transferred to Toole in June

2004.

        7.      Debtors filed their original plan, and, after approval of the original disclosure

statement was denied at a hearing, the Court directed the Debtors to file an amended disclosure

statement on or before May 6, 2005.  The amended disclosure statement was conditionally

---

[3] The  Motion for Approval of Sale Procedures and Bidding Protections appears at docket entry number 110 in the case styled *In re Florida Select Citrus Inc*., Case No. 6:04-bk-11050-KSJ.  The Order Granting the Motion for Approval of Sale Procedures and Bidding Protections appears at docket entry number 124 in the case styled *In re Florida Select Citrus Inc*., Case No. 6:04-bk-11050-KSJ.

[4] The Order Granting the Debtor's Motion to Sell Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and Exemption of Sale from Stamp or Other Similar Taxes appears at docket entry number 147 in the case styled  *In re Florida Select Citrus Inc*., Case No. 6:04-bk-11050-KSJ.

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

6

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

approved, and confirmation was scheduled for June 22, 2005. At the request of the Court, confirmation was rescheduled for July 8, 2005.

## Plan Overview

8.     This Plan is premised, among other things, on the substantive consolidation of the Debtors' assets and liabilities and the cancellation of Debtors' outstanding Common Stock. In general, all Common Stock of Debtors will be canceled upon the Effective Date and the New Common Stock will be distributed to Sherwood or its assigns in exchange for releasing the Reorganized Debtor from liability under the DIP Loan. Additionally, a trust will be created, the Liquidating Creditors Trust ("Trust"), and the Trust will be vested with any and all preference causes of action, fraudulent transfer causes of action, and all other causes of action pursuant to 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and 550, other than the Toole Adversary Proceeding (the "Avoidance Actions"), and all Claim valuations pursuant to 11 U.S.C. §506, and all objections to Claims pursuant to 11 U.S.C. §502 which were not pending as of Confirmation. The Toole Adversary will be retained by Debtors, or, as the case may be, Reorganized Debtor because the adversary has already been commenced and any recovery is likely subject to the Allowed Secured Claims in Classes 3 through 5.

9.     Funding for Confirmation will come from the Florida Select Cash on Confirmation and the AMC Cash on Confirmation. The Florida Select Cash on Confirmation will be used to pay the Allowed Administrative Claims, United States Trustee Fees, with the remaining balance to the Liquidating Creditor's Trust in Class 7. The AMC Cash on Confirmation will be used to pay the Allowed Administrative Claims, United States Trustee

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

7

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

Fees, with the remaining balance to be used to fund the ongoing operations of the Reorganized Debtor.

10.     Payment to the Allowed Secured Claims in Japan Pacific and Florida Select will also be made from the Florida Select Real Property Sale.  Currently, Japan Pacific and Florida Select are in the process of seeking a zoning change from industrial to commercial for their joint real property.  Thereafter, the Reorganized Debtor expects to market the property with developers and other potential land owners to solicit the highest possible return for the real property.  At this time, no broker has been retained, but the Reorganized Debtor will employ one if it is in the best interest of creditors.  Reorganized Debtor will actively market the real property and is currently developing a list, based on prior sales efforts, of potential purchasers.  It is not contemplated that the property will be sold through an auction.

11.     The treatment of all Classes of Claims is as follows:

a.     <u>Class 1 – Priority Wage, Vacation and Commission Claims</u>:  After paying Allowed Administrative Claims and except to the extent that the Holder of the Allowed Claim in Class 1 agrees to a different treatment, Reorganized Debtor will pay Allowed Class 1 Claims: (1) in full, in Cash, without interest, on the later of the Effective Date; (2) within thirty (30) days after the Claim becomes an Allowed Claim; or (3) the date on which such Claim otherwise becomes due and payable.  Funding for the Allowed Class 1 Claims will be from the Florida Select Cash on Confirmation and the AMC Cash on Confirmation.

b.     <u>Class 2: Sherwood (DIP Loan)</u>:  In full satisfaction of the amount of the Allowed Class 2 Secured Claim, Sherwood, or its assigns, will be issued 100% of the New Common Stock in the Reorganized Debtor.  In exchange for the New Common Stock, Sherwood

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

8

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

shall release Florida Select and AMC from liability of the amounts due and owing under the DIP Loan.

          c.         <u>Class 3: Public Bank (Florida Select/Japan Pacific)</u>: On the Effective Date, Reorganized Debtor will execute and deliver to Public Bank a Modification and Extension of the Public Bank Restated Note (Post Confirmation) in a form to be presented to Debtors prior to the Confirmation Hearing (the "Public Bank Agreement") the terms and conditions of which are incorporated by reference herein as if fully set forth herein. The Allowed Secured Claim of Public Bank will be repaid in accordance with the Public Bank Agreement, the main terms of which are as follows:

          (i) Public Bank shall retain all its Liens and security interests until its Allowed Secured Claim is paid in full, without the necessity of filing or recording any further documents. No changes have been made to the prepetition definitions of the collateral;

          (ii) The payment term of the Public Bank Agreement shall provide for payments to Public Bank thereunder by the Reorganized Debtor identical to the terms of repayment of the Silver Springs Note Assignment (i.e., payments in the amount of $27,777.77 during the period April 28, 2005 through September 28, 2005; $250,000.00 on or before October 28, 2005; payments of $41,666.66 during the months November 28, 2005 through April 28, 2006); provided, however, that commencing with the first calendar month subsequent to the calendar month in which the last payment under the Silver Springs Note Assignment is due to be paid, the Public Bank Agreement shall require the Reorganized Debtor to make a payment on or before the tenth day of each

month in the amount of $ 26,114.65, through and including December 10, 2006. Payments on the Class 3 claims will be applied first to fees and costs; and

       (iii) The Reorganized Debtor shall satisfy, reaffirm and/or execute such other documents as Public Bank and its legal counsel may reasonable require to evidence, perfect, and continue the liens and security interests currently held by Public Bank.

      d.    <u>Class 4: Sherwood (Florida Select/Japan Pacific)</u>:  The Holder of Allowed Class 4 Claims shall retain its Lien on the real property, personal property, and accounts receivable of Florida Select and Japan Pacific.  The Allowed Secured Claim will be paid in full over time with interest.  Interest shall accrue at the note rate as set forth in the Sherwood April 2001 Note and Sherwood July 2002 Note.  Within two years and upon the Florida Select Real Property Sale, Sherwood's Allowed Secured Claim shall be paid in full, after the satisfaction of the Allowed Secured Claims of Classes 3 and 5.  Any unsatisfied deficiency, if allowed, will be treated as an Unsecured Claim in Class 7.

      e.    <u>Class 5: Lake County Tax Collector</u>:  The Holder of Allowed Class 5 Claims shall retain its Lien on the real property of Japan Pacific and accrue interest at seven percent (7%).  Within two years and upon the Florida Select Real Property Sale, Lake County Tax Collector's Allowed Secured Claim shall be paid in full.

      f.    <u>Class 6: Sherwood (AMC)</u>:  The Holder of Allowed Class 6 Claim shall retain its Lien on the real property, personal property, accounts receivable, and inventory of Florida Select, Japan Pacific, and AMC.  The Allowed Secured Claim will be paid in full through the issuance of a PIK Note by the Reorganized Debtor.  The PIK Note will be in the face amount of Sherwood's Allowed Secured Claim as to AMC and bear interest as eight percent

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ
10
U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

(8%) per annum.  The PIK Note will require monthly payments of $50,000.00. which will be applied first to accrued post Confirmation interest and then to principal.  The PIK Note will mature, with all amounts due, in sixty (60) months.  If the Reorganized Debtor has insufficient funds to make any required monthly payments (up to a maximum shortfall of $25,000.00 per month), the Reorganized Debtor shall issue additional PIK Notes for such monthly shortfalls.  At maturity, the Reorganized Debtor will, initially, attempt to pay the balance of the Class 6 Claim through a refinancing.  If refinancing is not possible, Reorganized Debtor may be forced to sell the orchid operation to pay such claim.

   g. <u>Class 7:  General Unsecured Claims (Florida Select, Japan Pacific, and AMC)</u>:  The Holders of the Allowed Class 7 Claims will become beneficiaries of the Liquidating Creditors Trust, a liquidating trust to be formed on the Effective Date, which will be managed by the Creditor Agent, Michael Moecker, and will receive the following assets on the Effective Date:  (a) all preference causes of action, fraudulent transfer causes of action, and all other causes of action pursuant to 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and 550, other than the Toole Adversary Proceeding (the "Avoidance Actions"); and  (b) all Claim valuations pursuant to 11 U.S.C. §506, and all objections to Claims pursuant to 11 U.S.C. §502 which were not pending as of Confirmation..  Currently, any distributions to Class 7 creditors are speculative in nature, and depend upon such contingencies as the success in litigation by the Creditor Agent.

   h. <u>Class 8: Equity Interests (Florida Select Japan Pacific, and AMC)</u>:  The Class 8 Interests will be extinguished and will become null and void upon Confirmation.  The Holders of Class 8 Interests will not receive or retain any property on account of such Interests.

Accordingly, with the exception of Class I-Priority Wage Claims, all Classes are Impaired under the Plan.

### Post-Confirmation Officers and Management

12.     On the Effective Date, the Debtors will be substantively consolidated into the Reorganized Debtor, and all Estate Assets will vest in Reorganized Debtor, which shall assume any and all responsibility for the payments under the Plan.  The surviving entity will be AMC. Debtors believe substantive consolidation is warranted because of the substantial overlap of debts among the three debtors.  Moreover, due to Mr. Tominaga's previous co-mingling of assets and many intercompany transfers, it would be difficult to determine an exact tracing of debts and allocation thereof.  On the Effective Date, all of Florida Select's, Japan Pacific's, and AMC's outstanding Common Stock will be extinguished.

13.     I have reviewed the Ballot Tabulation and the status of the Impaired Classes under the Plan is summarized in the following table:

### Japan Pacific/Florida Select/AMC

| Class | Status | Voting Results |
|---|---|---|
| Class 1 - Priority Wage | Unimpaired | No Vote Necessary |
| Class 2-  Sherwood DIP | Impaired | Accepts |
| Class 3-  Public Bank | Impaired | Accepts |
| Class 4 - Sherwood (JPTC/FSC) | Impaired | Accepts |
| Class 5 - Lake County Tax | Impaired | No Vote |
| Class 6 - Sherwood (AMC) | Impaired | Accepts |
| Class 7 - General Unsecured Claims | Impaired | Accepts |

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

12

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

Class 8 - Equity                           Impaired            No Vote

## **Confirmation Requirements**

14.     I have reviewed the Plan with my attorney and have determined that it complies

with the Code.

15.     PLAN COMPLIANCE - SECTION 1129(a)(1).  The Plan:

        a.      designates Classes of Claims and Interests in accordance with Section

1122 of the Bankruptcy Code;

        b.      specifies Classes that are not impaired and Classes that are impaired;

        c.      specifies the treatment of any Classes that are impaired under the Plan;

        d.      provides the same treatment for each Claim or Interest of a particular

Class; and

        e.      provides adequate means, in Article VII, for the execution of the Plan.

16.     PROPONENT COMPLIANCE - SECTION 1129(a)(2).  Debtors have complied

with all applicable provisions of the Bankruptcy Code.  By way of example, Debtors have:

        a.      performed and complied with the duties imposed under Bankruptcy Code

Section 1107;

        b.      solicited acceptances to the Plan only in accordance with Bankruptcy

Code Section 1125;

        c.      obtained court orders for the employment of professionals; and

        d.      complied with the Bankruptcy Code and Bankruptcy Rules regarding the

use, sale and lease of property of the estate.

17.     <u>GOOD FAITH - SECTION 1129(a)(3)</u>.  The Plan has been proposed in good faith and not by any means forbidden by law.  The purpose of the Plan is to pay all Classes of Allowed Claims within a reasonable time to the extent of the Debtors' projected available cash flow.

18.     <u>PAYMENTS TO PROFESSIONALS - SECTION 1129(a)(4)</u>.  The Plan provides that Debtors will pay the Professionals in Cash, the amount awarded to such Professionals by Final Order of the Bankruptcy Court on the later of the Effective Date or the date upon which any order awarding fees and/or expenses becomes a Final Order.  The Holder of an Allowed Claim for Professional Fees may be paid on such other date and upon such other terms as may be agreed upon by the Professional.

Each Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application.  Only the amount of fees allowed by the Bankruptcy Court will be required to be paid under the Plan.  All such allowances shall be subject to deductions for payments already made pursuant to the Order authorizing interim compensation of professionals.

The Plan provides that all reasonable fees for services rendered in connection with the Chapter 11 Cases and the Plan <u>after</u> the Effective Date, including those relating to the resolution of pending Claims, shall be paid by Reorganized Debtor without further Bankruptcy Court authorization.

19.     <u>POST-CONFIRMATION MANAGEMENT - SECTION 1129(a)(5)</u>.  On the Confirmation Date, the operations of Reorganized Debtor will be overseen by its Directors.  The Board of Directors shall have all corporate authority vested in boards of directors under the

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

14

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

applicable laws of the State of Florida, including the power to appoint and terminate officers and the power to liquidate or merge the Reorganized Debtor, with all such powers to be exercised by a majority vote.  It is anticipated that on the Confirmation Date, the officers and directors of the Reorganized Debtor will be:

| **Directors** | **Compensation** |
| --- | --- |
| Julian Benscher | N/A |
| George Roat | N/A |

| **Officers** | |
| --- | --- |
| Julian Benscher | N/A |
| George Roat | N/A |

20.    Reorganized Debtor reserves the right to adjust such compensation at a date which is six months following the Effective Date.

21.    GOVERNMENT APPROVAL - SECTION 1129(a)(6).  There are no governmental regulatory commissions with jurisdiction after Confirmation of the Plan whose approval is needed.

22.    BEST INTEREST OF CREDITORS - SECTION 1129(a)(7).  With respect to each Impaired Class of Allowed Claims or Interests, each Holder of an Allowed Claim or Interest of such Class has either accepted the Plan or will receive or retain under the Plan on account of such Allowed Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive if the Debtors were liquidated under Chapter 7 of the Code on such date.  In a Chapter 7 liquidation, any return to Creditors will be delayed and reduced by the necessary time and expense of administration by a Chapter 7 trustee. Further, all secured creditors could assert their rights as holders of security interests and seek to take possession of the property securing their Claims.  In light of the magnitude (over

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

15

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

$17,000,000 principal amount) of the Secured Creditors' Claims and the current estimated liquidation value of Debtors' assets, it is likely that the Holders of Allowed Unsecured Claims would receive nothing in a Chapter 7 liquidation. The Plan will result in a more certain, expeditious and better return for all Creditors than would result in a Chapter 7 liquidation.

23.　　ACCEPTANCE OR REJECTION OF PLAN - SECTION 1129(a)(8). There are seven (7) Impaired Classes of Claims under the Plan. Attached as **Exhibit A** is the Ballot Tabulation setting forth the acceptances of the Plan. As evident from the Ballot Tabulation, all Impaired Class of Claims who voted, voted in favor of the Plan.

24.　　PRIORITY CLAIMS - SECTION 1129(a)(9). The Plan provides for payment in full of all Allowed Administrative Priority Claims. All other Priority Claims are receiving the treatment required under the Code.

25.　　ACCEPTANCE BY IMPAIRED CLASS - SECTION 1129(a)(10). At least one Impaired Class, Class 7, has accepted the Plan without including acceptances by insiders.

26.　　FEASIBILITY - SECTION 1129(a)(11). The management of the Debtors has analyzed its ability to meet the obligations created under the Plan. Debtors have based the projections attached to the Disclosure Statement. The primary factors that will determine the feasibility of Debtors' Plan are the (i) the Funds from the Cash on Confirmation; and (ii) the viability of the projections of the Debtors over the five year period outlined in the projections. With the recent results and continuing impact of the above noted improvements, Debtors believe that they will be able to continue to generate significant operating revenues in an amount that will assure their ability to fund the Plan, and hence to assure that the Plan is feasible.

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

16

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

27.     TRUSTEE FEES - SECTION 1129(a)(12). The Plan provides for the payment of all fees payable under 28 U.S.C. §1930 on the Effective Date of the Plan. The only fees potentially owed by Debtors are the United States Trustee's quarterly fee for the second quarter of 2005.

28.     RETIREE CLAIMS - SECTION 1129(a)(13). There are no unsecured claims for contribution to a retiree benefit plan. The Debtors do not have any retiree benefit plans.

29.     OBJECTIONS. One objection by Tominaga was filed. Debtors believe such objection has no merit and will address such at the Confirmation Hearing.

Further affiant sayeth not.

**AMERICAN MERCANTILE, CORP.**

By: _____

Julian M. Benscher
President

STATE OF FLORIDA          )
                          )SS:
COUNTY OF ORANGE          )

Sworn to and subscribed before me this ___5___ day of July 5, 2005, by JULIAN M.

BENSCHER, who is personally known to me.

_____
Signature of Person Taking Acknowledgment
Print Name: _Soledad Nasan_
Title: Notary Public
Serial No. (if any) _____
Commission Expires: _____

S. HASAN
MY COMMISSION # DD 256076
EXPIRES: October 10, 2007
Bonded Thru Notary Public Underwriters

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

17

U:\Bkry\JapPac\Pld\confirm affdvt - amt.wpd

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true copy of Affidavit of Julian Benscher in Support of Confirmation, together with all exhibits, has been furnished by either electronic transmission and/or U.S. First Class mail to: Julian Benscher, President, 305 West Broad Street, Groveland, FL 34736; Andrew Brumby, Esq., Shutts & Bowen, a/f Public Bank, 300 S. Orange Avenue, Suite 1000, Orlando, FL 32801; Roy Kobert, Esq., Broad & Cassel, a/f Finkler and Chui, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801; Carrie Beth Baris, Esq., Bush Ross Gardner Warren & Rudy, a/f Yasuhiko Tominaga, P.O. Box 3913, Tampa Fl 33601; Robert Higgins, P.O. Box 2809, Orlando, Fl 32802-2809; and the Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801, this 5th day of July 2005.


                                  /s/ R. Scott Shuker
                                  R. Scott Shuker, Esquire

In re: American Mercantile Corp.
Case No. 6-04-bk-11052-KSJ

18

U:\Bkry\JapPac\Pld\confirm affdvt - amc.wpd

In re:                                          CASE NO. 6-04-bk-11052-KSJ

**AMERICAN MERCANTILE**                         **CHAPTER 11**
**CORPORATION, a Florida corporation,**

                        **Debtor.**

_____/

## BALLOT TABULATION

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|-------------------------------|------|
| 1 | Priority Wage, Commission,<br><u>Vacation and Benefit Claims</u> | N/A |
| | N/A | |
| | Number of Votes: | N/A |
| | Number of Votes Accepting: | N/A |
| | Dollar Amount of Votes: | N/A |
| | Dollar Amount of Votes Accepting: | N/A |
| | % of Votes Accepting: | N/A |
| | % of Dollar Amounts Accepting: | N/A |
| | Impaired Class: | No |
| | Requisite Vote: | N/A |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|-------------------------------|------|
| 2 | <u>Sherwood Investments (Overseas) Ltd - DIP</u> | ACCEPTS |
| | Number of Votes: | 3 |
| | Number of Votes Accepting: | 3 |
| | Dollar Amount of Votes: | $317,692.00 |
| | Dollar Amount of Votes Accepting: | $317,692.00 |
| | % of Votes Accepting: | 100% |
| | % of Dollar Amounts Accepting: | 100% |
| | Impaired Class: | Yes |
| | Requisite Vote: | Yes |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|-------------------------------|------|
| 3 | Public Bank<br>(secured debt) | ACCEPTS |
| | Number of Votes: | 2 |
| | Number of Votes Accepting: | 2 |
| | Dollar Amount of Votes: | $4,432,508.05 |
| | Dollar Amount of Votes Accepting: | $4,432,508.05 |
| | % of Votes Accepting: | 100% |
| | % of Dollar Amounts Accepting: | 100% |
| | Impaired Class: | Yes |
| | Requisite Vote: | Yes |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|-------------------------------|------|
| 4 | Sherwood Investments (Overseas) Ltd<br>(Japan Pacific and Florida Select secured debt) | ACCEPTS |
| | Number of Votes: | 2 |
| | Number of Votes Accepting: | 2 |
| | Dollar Amount of Votes: | $4,000,000.00 |
| | Dollar Amount of Votes Accepting: | $4,000,000.00 |
| | % of Votes Accepting: | 100% |
| | % of Dollar Amounts Accepting: | 100% |
| | Impaired Class: | Yes |
| | Requisite Vote: | Yes |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|---|---|---|
| 5 | <u>Lake County Tax</u> | NO VOTE |

| | | |
|---|---|---|
| | Number of Votes: | 0 |
| | Number of Votes Accepting: | 0 |
| | Dollar Amount of Votes: | 0 |
| | Dollar Amount of Votes Accepting: | 0 |
| | % of Votes Accepting: | 0% |
| | % of Dollar Amounts Accepting: | 0% |
| | Impaired Class: | Yes |
| | Requisite Vote: | No |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|---|---|---|
| 6 | <u>Sherwood Investments (Overseas) Ltd</u><br>(American Mercantial secured debt) | ACCEPTS |

| | | |
|---|---|---|
| | Number of Votes: | 1 |
| | Number of Votes Accepting: | 1 |
| | Dollar Amount of Votes: | $14,000,000.00 |
| | Dollar Amount of Votes Accepting: | $14,000,000.00 |
| | % of Votes Accepting: | 100% |
| | % of Dollar Amounts Accepting: | 100% |
| | Impaired Class: | Yes |
| | Requisite Vote: | Yes |

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|------------------------------|------|
| 7 | <u>General Unsecured - All Debtors</u> | ACCEPTS |

|  |  |
|--|--|
| Number of Votes: | 31 |
| Number of Votes Accepting: | 25 |
| Dollar Amount of Votes*: | $40,764,203.50 |
| Dollar Amount of Votes Accepting*: | $37,757,408.47 |
| % of Votes Accepting: | 81% |
| % of Dollar Amounts Accepting: | 93% |
| Impaired Class: | Yes |
| Requisite Vote: | Yes |

*Includes $26,299,317.34 in dollar votes by Sherwood.
Without Sherwood vote, the dollar percentage accepting is
approximately 80%.

| CLASS | CREDITOR<br>Amount Per Ballot | VOTE |
|-------|------------------------------|------|
| 8 | <u>Equity</u> | NO VOTE |

|  |  |
|--|--|
| Number of Votes: | 0 |
| Number of Votes Accepting: | 0 |
| Dollar Amount of Votes: | N/A |
| Dollar Amount of Votes Accepting: | N/A |
| % of Votes Accepting: | 0 |
| % of Dollar Amounts Accepting: | 0 |
| Impaired Class: | Yes |
| Requisite Vote: | No |

**DATED** this 5th day of July 2005.

      /s/ R. Scott Shuker

R. Scott Shuker
Florida Bar No. 984469
**GRONEK & LATHAM, LLP**
390 N. Orange Avenue, Suite 600
P.O. Box 3353 (32802-3353)
Orlando, Florida  32801
Tel: 407-481-5800
Fax: 407-481-5801
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:                                          CASE NO. 6-04-bk-11052-KSJ

AMERICAN MERCANTILE                             CHAPTER 11
CORPORATION, a Florida corporation,

                    Debtor.
_____/

### Certificate of Service

**I HEREBY CERTIFY** that a true copy of the Ballot Tabulation, has been furnished electronically or by U.S. mail, postage-paid, to: American Mercantile Corporation, c/o Julian Benscher, President, 305 West Broad Street, Groveland, FL 34736; Andrew Brumby, Esq., Shutts & Bowen, a/f Public Bank, 300 S. Orange Avenue, Suite 1000, Orlando, FL 32801; Roy Kobert, Esq., Broad & Cassel, a/f Finkler and Chui, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801; Carrie Beth Baris, Esq., Bush Ross Gardner Warren & Rudy, a/f Yasuhiko Tominaga, P.O. Box 3913, Tampa Fl 33601; Robert Higgins, P.O. Box 2809, Orlando, Fl 32802-2809; and the Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801, this 5th day of July 2005.

                                        /s/ R. Scott Shuker
                                        _____
                                        R. Scott Shuker, Esquire